[No. B077484. Second Dist., Div. Five. June 7, 1994.]

VALSAN PARTNERS LIMITED PARTNERSHIP, Plaintiff and Appellant, v.
CALCOR SPACE FACILITY, INC., Defendant and Respondent.

810

COUNSEL

Scott E. Wood for Plaintiff and Appellant.

Freshman, Marantz, Orlanski, Cooper & Klein, Jeffrey L. Davidson and Matthew C. Thompson for Defendant and Respondent.

OPINION

**GODOY PEREZ, J.**—Plaintiff and appellant Valsan Partners Limited Partnership (Valsan) appeals from the trial court order denying its petition to compel arbitration with defendant and respondent Calcor Space Facility, Inc. (Calcor). It has also appealed the trial court order purporting to enforce the judgment entered in confirmation of one arbitration award and the order entering judgment after confirmation of another arbitration award. For the reasons set forth below, all three orders and the concomitant judgment are reversed.

### FACTS AND PROCEDURAL HISTORY

These matters arise from a 1987 contract (the agreement or the contract) between Valsan and Calcor by which Calcor would manufacture and Valsan would buy certain components used to modify commercial aircraft engines (the units). The agreement contemplated the purchase of an initial 200 units at a price of $135,000 each.

The contract included an arbitration clause, which provided that "[a]ll disputes arising out of or relating to this Agreement shall be finally settled

by arbitration to be conducted in Los Angeles, California in accordance with the rules of the American Arbitration Association. Judgment upon the award rendered may be entered in any court having jurisdiction."

Paragraph 16 of the contract allowed Valsan to terminate the agreement "for convenience" on 60 days' notice. If Valsan terminated within the first 18 months, a "termination schedule" provided that it would have to pay for more than 16 units. A new termination schedule for each succeeding 18-month period would be submitted by Calcor and if the parties could not agree on that schedule, an arbitrator would.[1]

Frequent disputes arose between Valsan and Calcor, resulting in an arbitration and concomitant arbitration award of January 11, 1990 (first award). The disputes at issue involved a letter of credit, the obligation to provide security, the delivery rate, price and payment terms for the units and Calcor's obligation to deliver units. As a result of the award, the delivery schedule was lengthened. Valsan had made advance payments of more than $5.6 million, which would be partially credited over time until 200 units were delivered. The unit price was raised to $195,651 because of design changes. The termination schedule would remain the same but "shall be equitably adjusted for any change in the unit price . . . or in the delivery schedule." Valsan was deemed to be the owner of tooling used by Calcor to manufacture the units and Calcor was to provide a Uniform Commercial Code (UCC)-1 financing statement to secure Valsan's interest in that equipment. Finally, the award stated that "[t]he contract continues in effect in accordance with its terms as construed hereby."

The first award was confirmed by the court and judgment was entered pursuant to its terms on April 26, 1990 (the first judgment).

More disputes arose, resulting in a second arbitration award dated June 23, 1992 (second award). The second award recited at length the performance history of the parties under the contract and the effect of the first award. The arbitrator did so "because the parties now dispute the meaning of the award" and because they asked him "to review the transcript and the award of the first arbitration and have submitted their disputes as to the first arbitration award for determination in this second arbitration."[2]

While delivery delays considered in the first award were most likely Calcor's fault, the arbitrator stated that Valsan now needed to suspend

---

[1] Valsan contends that the effect of this provision was to create a liquidated damages clause, since it would be obligated to pay for the number of units contained in the termination schedule in effect at the time it elected to terminate the agreement.

[2] Despite this language by the arbitrator, Calcor contends that it did not believe Valsan could rearbitrate the meaning of the first award and was deemed by the court to have

deliveries because of market conditions. Though Valsan was still obligated to accept at least two units per month, as per the first award, the second arbitrator ordered that deliveries be suspended until April 1993. Valsan's $5.6 million advance would still be applied as partial credits against future deliveries, as per the first award. Calcor had not yet supplied the required UCC-1 financing statement to secure Valsan's interest in certain tooling and equipment and had to do so. Valsan would pay Calcor $10,000 a month as idle time costs from March 1, 1991, until 60 days before deliveries resumed and would also pay a one-time $100,000 fee to cover shutdown and startup costs. The paragraph 16 termination schedule was amended to cover the period from July 1992 to December 1993. The arbitrator noted that the contract, as construed by the first award and the second award, would remain in effect.

The second award was confirmed and judgment was entered according to its terms on July 30, 1992 (the second judgment).

Calcor did not provide the required financing statement and Valsan therefore refused to perform as required by the agreement and the first two awards. Valsan tried to compel a third arbitration, which Calcor sought to abate, arguing that all or part of the second award should be enforced. Valsan countered that it had the right to arbitrate new and different disputes which might affect its duty to perform under the second award. The Honorable Charles C. Lee denied Calcor's motion for the reasons set forth in Valsan's opposition papers and appointed retired Court of Appeal Justice Richard Amerian as a referee to determine what parts, if any, of the second judgment were enforceable and not subject to the matters in dispute under the third arbitration.

Justice Amerian made a third arbitration award on April 20, 1993 (third award), finding that: Calcor did not provide the proper assurances for Valsan's security interest until February 13, 1993; and Valsan had "reasonable grounds for insecurity as to the performance of Calcor" which justified its suspension of performance up to that date.

As of February 13, 1993, however, the arbitrator concluded that Valsan was obligated to perform under the judgment entered on the second award but had not, so that Calcor was "entitled to immediate performance of The [second] Judgment . . . ."

On May 7, 1993, Valsan gave Calcor written notice that it was terminating the agreement as per paragraph 16. Based on the moneys advanced to Calcor

consented to the second arbitration only because its former lawyer mistakenly filed a counterclaim to Valsan's arbitration request.

and the previous awards and judgments, Valsan calculated that it was owed $3,000. When Calcor disagreed, Valsan sought to begin yet a fourth arbitration, this time to determine the rights and obligations of the parties upon termination of the agreement, especially with regard to Valsan's $5.6 million advance to Calcor.

Valsan brought a petition to compel arbitration and Calcor opposed it, arguing that Valsan was not entitled to arbitrate the effect and meaning of the judgment entered on the second award. Instead, Calcor was entitled to performance of Valsan's obligations under that judgment, and under the third award, which found that Valsan was obliged to comply with the second award as of February 13, 1993.

Along with its opposition to the petition to compel arbitration, Calcor brought two separate motions of its own: The first to "enforce" the judgment on the second award and the third to confirm the third award and enter judgment upon it. As part of these motions, Calcor asked for entry of judgment on the third award in the sum of $1,029,993.92, which represented the idle time payments, shutdown and startup costs, and payments owed on four units which Calcor manufactured pursuant to the second award but which Valsan refused to accept.

The motions were argued before the Honorable C. Bernard Kaufman on June 23, 1993. Judge Kaufman was concerned that Valsan was asserting a virtually unlimited right to rearbitrate prior awards. While admitting that Valsan had a contractual right to arbitrate the latest dispute, Judge Kaufman denied the petition to compel arbitration without prejudice, subject to Valsan's compliance with all previous arbitration awards and payment of more than $1 million to Calcor. The court granted Calcor's motions to enforce the judgment on the second award and confirm the third award and entered judgment for Calcor in the sum of $1,029,993.92.

This appeal timely followed and Valsan raises the following issues: 1) the court was obligated to grant the petition to compel arbitration; 2) there is no authorized procedure for a trial court to "enforce" a judgment already entered which confirmed an arbitration award; and 3) in confirming the third award, the court was not authorized to enter judgment in any sum, since the third award did not do so.[3]

---

[3]On September 21, 1993, this court granted Valsan's petition for writ of supersedeas and stayed enforcement of the judgment entered on the third award pending resolution of this appeal.

DISCUSSION

1. *The Petition to Compel Arbitration Should Have Been Granted*

█ Title 9 of the Code of Civil Procedure (Code Civ. Proc., § 1280 et seq.) is a comprehensive statutory scheme regulating private arbitration.[4] Through this detailed scheme, the Legislature has expressed a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution. As a result, courts will indulge every intendment to give effect to such proceedings. (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].) "Indeed, more than 70 years ago this court explained: 'The policy of the law in recognizing arbitration agreements and in providing by statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.' (*Utah Const. Co.* v. *Western Pac. Ry. Co.* (1916) 174 Cal. 156, 159 [162 P. 631] . . . . 'Typically, those who enter into arbitration agreements expect that their dispute will be resolved without necessity for any contact with the courts.' [Citation.]" (*Ibid.*)

Section 1281.2 provides the remedy for a party to an agreement with an arbitration clause where the other party refuses to arbitrate a dispute. That section states, in relevant part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for the revocation of the agreement. [¶] (c) A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction . . . and there is a possibility of conflicting rulings on a common issue of law or fact. . . . [¶] If the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate such controversy may not be refused on the ground that the petitioner's contentions lack substantive merit."

█ Under section 1281.2, the trial court determines whether there is a duty to arbitrate the particular dispute. In doing so, the court must examine and, to a limited extent, construe the underlying agreement. (*United Transportation Union* v. *Southern Cal. Rapid Transit Dist.* (1992) 7 Cal.App.4th

---

[4]Unless otherwise indicated, all future statutory references are to the Code of Civil Procedure.

804, 808 [9 Cal.Rptr.2d 702].) "Doubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration. The court should order them to arbitrate unless it is clear that the arbitration clause cannot be interpreted to cover the dispute. [Citation.]" Additionally, '[i]f the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate such a controversy may not be refused on the ground that the petitioner's contentions lack substantive merit.' [Citations.]" (*Ibid.*)

Where the record shows that there was an agreement to arbitrate, the trial court is required to order arbitration unless it determines that the petitioner waived its right to arbitration or that grounds existed for revocation of the agreement. (*Loscalzo* v. *Federal Mut. Ins. Co.* (1964) 228 Cal.App.2d 391, 395-396 [39 Cal.Rptr. 437]; accord, *Office & Professional Employees Union* v. *Sea-Land Service, Inc.* (1979) 90 Cal.App.3d 844, 847, 849 [153 Cal.Rptr. 621]; *Morris* v. *Zuckerman* (1967) 257 Cal.App.2d 91, 97 [64 Cal.Rptr. 714].)

 There was no issue here as to whether Valsan waived its right to arbitrate or whether the agreement had been revoked. Instead, Judge Kaufman expressly recognized Valsan's right to arbitrate its latest and presumably final dispute with Calcor, arising from Valsan's termination of the agreement. Despite this, he denied the petition without prejudice and stated he would not grant it until Valsan paid the sums supposedly due under the second and third awards. There is no authority for such an order and the petition to compel arbitration should have been granted.

To the extent it might be argued that Judge Kaufman at least impliedly held Valsan had no right to arbitrate the meaning or effect of the prior awards, the argument is belied by the contract itself, as construed by the arbitrators and as first considered by Judge Lee. An appellate court is not bound by the trial court's construction of a contract based solely upon the terms of the written instrument where there is no conflict in the evidence. In such a case, the interpretation of the contract becomes a question of law and we must make an independent determination of its meaning. (*Titan Group, Inc.* v. *Sonoma Valley County Sanitation Dist.* (1985) 164 Cal.App.3d 1122, 1127 [211 Cal.Rptr. 62]: [construing arbitration clause and overruling trial court order denying petition to compel arbitration].)

 The second award came about because the parties disputed the meaning of the first award and asked the arbitrator to interpret it. Valsan was allowed by Judge Lee to proceed with the third arbitration on the ground that

it was entitled to arbitrate new disputes which might affect its performance under the two earlier awards. That is precisely the basis of Valsan's petition to compel a fourth arbitration: following its termination of the contract, its obligations under the three previous awards could be reviewed and adjusted.

While we share the trial court's concern about a party attempting to endlessly rearbitrate previous awards, this contention makes sense, since each of the first three awards—including the application of Valsan's $5.6 million advance to Calcor—was predicated upon the contract continuing in force as construed by the arbitrators. Any doubts as to the meaning or extent of an arbitration award are for the arbitrators and not the court to resolve. (*Morris* v. *Zuckerman* (1968) 69 Cal.2d 686, 690-691 [72 Cal.Rptr. 880, 446 P.2d 1000].)

## 2. *The Judgment Exceeded the Scope of the Third Award*

Chapter 4 of title 9 of the Code of Civil Procedure is titled "Enforcement Of The Award" and contains the only statutory provisions for court enforcement of an arbitrator's decision. (§§ 1285-1288.8.) Section 1285 permits a party to petition the court to "confirm, correct or vacate the award." The powers of the court in ruling on such a petition are limited as follows: ". . . the court shall confirm the award as made . . . unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding." (§ 1286.)

The court may not correct an award unless, among others, a petition or response requesting that the award be corrected or vacated was filed. (§ 1286.8, subds. (a), (b).) Once such a petition has been properly filed and served, the court shall correct the award if it determines that: "(a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; [¶] (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (c) The award is imperfect in a matter of form, not affecting the merits of the controversy." (§ 1286.6, subds. (a), (b) and (c).)

Finally, if an award is confirmed, "judgment shall be entered in conformity therewith. The judgment so entered has the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action; and it may be enforced like any other judgment of the court in which it is entered." (§ 1287.4.)

The second award and judgment held that Valsan could suspend performance due to changes in market conditions. Valsan would have to pay idle

time money and shutdown/startup costs to Calcor. Calcor was to provide the required UCC-1 financing statement to secure Valsan's interest in the tooling and materials held by Calcor. Valsan's $5.6 million advance would be partially credited over time to the 200 units which Valsan would buy during the life of the agreement.

The third award came about because Calcor did not timely provide the required UCC statement. The arbitrator held that Valsan was justified in suspending performance under the second award until February 13, 1993, but as of that date became obligated to perform under the second award and judgment.

■ The second and third awards (and the second judgment) did not impose damages for breach of the agreement. Instead, they in effect rewrote the agreement to reflect changed conditions. While the trial court here could properly confirm the third award as a judgment, it had to confirm that award "as made." (§ 1286.) The judgment entered went beyond the boundaries of the third award and added damages for a sum certain. Even if such a change could be properly considered as a correction under section 1286.6 (discussed *post*), Calcor did not petition the court for a correction as required but instead merely asked for confirmation. (§ 1286.8, subd. (a).)

Assuming for discussion's sake only that the proper procedures were followed, the court could not and should not have amended the award to include a sum certain for damages which was not included in the award as rendered. (*Banks* v. *Milwaukee Ins. Co.* (1966) 247 Cal.App.2d 34, 37-38 [55 Cal.Rptr. 139, 36 A.L.R.3d 933]; see also *Moncharsh* v. *Heily & Blase*, *supra*, 3 Cal.4th at pp. 27-28: [arbitration awards may only be corrected on the enumerated statutory grounds].)

In so holding, we reject Calcor's reliance on section 1292.6 and its interpretation by the court in *Colvig* v. *RKO General, Inc.* (1965) 232 Cal.App.2d 56 [42 Cal.Rptr. 473].

Section 1292.6 states: "After a petition has been filed under this title, the court in which such petition was filed retains jurisdiction to determine any subsequent petition involving the same agreement to arbitrate and the same controversy, and any such subsequent petition shall be filed in the same proceeding."

The plaintiff in *Colvig* was a radio announcer who was fired then reinstated pursuant to an arbitration award which was confirmed as a judgment. When the radio station refused to allow him on the air, but still paid his

salary, Colvig brought an action for damages, which was dismissed after a demurrer by the employer was sustained.

The appellate court held that Colvig had stated an action for breach of contract, since a judgment "is a contract upon which the parties may maintain a separate action between themselves." (*Colvig* v. *RKO General, Inc., supra*, 232 Cal.App.2d at p. 65.) The court also held that Colvig's lawsuit based on such a breach should have been brought as a petition in the same proceeding in which the arbitration award was confirmed and judgment entered. Even so, it was a mere procedural error which could be corrected by consolidating the two. (*Id.,* at pp. 74-75.) Based on this, Calcor argues the court had jurisdiction under section 1292.6 to provide the relief awarded.

First, even if the *Colvig* court's interpretation of section 1292.6 were correct, it still contemplated a trial based on the plaintiff's allegations that the arbitration award and judgment had been breached. The trial court here summarily entered judgment without the benefit of a trial or the taking of evidence.

Regardless, we reject *Colvig* because it misreads section 1292.6. The continuing jurisdiction contemplated by that section only applies to petitions under title 9 relating to the same arbitration. If the petition or motion being considered is not provided for in title 9, then the court does not have continuing jurisdiction under section 1292.6. (*Brock* v. *Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1804-1805 [13 Cal.Rptr.2d 678].) Title 9 of the Code of Civil Procedure only provides for the following petitions: to compel arbitration (§ 1281.2); to consolidate separate but related arbitrations (§ 1281.3); to stay arbitration (§ 1281.4); and to confirm, correct or vacate an award and enter judgment upon it (§§ 1285, 1287.4). Nowhere does the code provide the court jurisdiction to hear and determine a postaward lawsuit for breach of judgment and the *Colvig* court's ruling was incorrect.

The same reasoning applies to the facts here. The trial court had continuing jurisdiction under section 1292.6 to hear Valsan's petition to compel arbitration and Calcor's petition to confirm the third award and enter judgment upon it since both petitions are provided for under title 9. If, under *Brock*, the court only had jurisdiction to consider petitions provided for by title 9, it is axiomatic that it was bound to follow the statutory guidelines for doing so. For the reasons stated above, the court exceeded that jurisdiction and the orders and judgment are reversed.

■ As for the order granting Calcor's motion to enforce the second judgment, there is no such procedure authorized by the arbitration statutes

and the court did not have jurisdiction to hear it. The second judgment was enforceable the same as any other judgment in a civil action (§ 1287.4) but could not be amended in the manner or on the grounds advanced by Calcor.

## DISPOSITION

The order denying Valsan's petition to compel arbitration is reversed and the parties are ordered to commence arbitration. The order confirming the third award and entering judgment upon it is reversed, along with the order purporting to enforce the second judgment by entering the above mentioned judgment. Appellant to recover its costs on appeal.

Grignon, Acting P. J., and Armstrong, J., concurred.