[No. B132500. Second Dist., Div. Three. Aug. 10, 2000.]

COAST PLAZA DOCTORS HOSPITAL, Plaintiff and Respondent, v.
BLUE CROSS OF CALIFORNIA, Defendant and Appellant.

678

## COUNSEL

Musick, Peeler & Garrett, William H. Hastie, Cheryl A. Orr and Nancy A. Ramirez for Defendant and Appellant.

Payne & Fears, Daniel L. Rasmussen, Thomas L. Vincent and Paul A. Bokota for Plaintiff and Respondent.

## OPINION

CROSKEY, J.—In this case, appellant Blue Cross of California (Blue Cross) attacks the trial court's denial of its motion to compel the arbitration of a dispute with respondent Coast Plaza Doctors Hospital (Coast Plaza). After Coast Plaza filed an action against Blue Cross on numerous tort theories, all related to the reimbursement rates paid by Blue Cross pursuant to a service agreement with Coast Plaza, Blue Cross filed a petition to compel arbitration of Coast Plaza's claims. The service agreement contained an arbitration clause, but Coast Plaza argued that it did not apply because (1) Coast Plaza had terminated the agreement two days before filing suit, (2) its action sought injunctive relief which, as a matter of law, is not arbitrable, and (3) the arbitration provision was unconscionable and therefore unenforceable. The trial court denied Blue Cross's motion.

After a review of the record, we are persuaded that the arbitration clause does apply to this dispute and is enforceable. Coast Plaza's claim for injunctive relief can be severed and stayed pending the conclusion of the arbitration which may have the effect of resolving all issues between the parties. We therefore will reverse the order denying Blue Cross's petition, issue an order staying all further proceedings in the trial court, including all discovery, pending completion of the arbitration, and remand for appropriate proceedings.

## Factual and Procedural Background[1]

Coast Plaza is an acute care hospital operating in Norwalk, California. Blue Cross is a managed health care services provider. On January 1, 1996, Coast Plaza and Blue Cross entered into a comprehensive contracting service agreement (Service Agreement) under which Blue Cross agreed to reimburse Coast Plaza at set rates (hereinafter the Reimbursement Rates) for specified health care services supplied by Coast Plaza to patient members of Blue Cross's health care plans. The Service Agreement was for an initial fixed term of two years, but was terminable thereafter upon 180 days' written notice by either party. The Service Agreement also had a very broad arbitration clause.[2]

For several months beginning in the fall of 1998 and ending in January 1999 Coast Plaza sought to renegotiate Blue Cross's Reimbursement Rates. Coast Plaza claimed that it needed an increase in such rates if it were going to continue serving patients who were Blue Cross members; at the rates specified in the Service Agreement Coast Plaza lost money with respect to Blue Cross patients. When Blue Cross refused to negotiate satisfactorily higher Reimbursement Rates, Coast Plaza, in December of 1998, "informed" Blue Cross that it was terminating the Service Agreement, effective February 28, 1999.[3]

Two days later, on March 2, 1999, Coast Plaza filed the instant action and alleged causes of action for (1) unfair trade practices in violation of Business and Professions Code section 17020 et seq., (2) unfair trade practices based on acts of intimidation, (3) intentional, and (4) negligent interference with prospective economic advantage, and (5) unfair business practices in violation of Business and Professions Code section 17200.

---

[1]Apart from their differences as to the interpretation to be given to the service agreement between them, the parties have no dispute as to the relevant facts.

[2]The arbitration clause in the Service Agreement provided: "9.2. *Any problem or dispute arising under this Agreement and/or concerning the terms of this Agreement*, other than a Utilization Review decision as provided for in Article VII, that is not satisfactorily resolved under Section 9.1, *shall be arbitrated.* Blue Cross and Hospital agree to use binding arbitration for any such problem or dispute under the Commercial Rules of the American Arbitration Association, unless otherwise mutually agreed in writing by Blue Cross and Hospital. The arbitration shall also be subject to California Code of Civil Procedure, Title Nine, Section 1280, et seq., unless otherwise mutually agreed. Such arbitration shall be initiated by either party making a written demand for arbitration on the other party. [¶] 9.3. Hospital and Blue Cross agree that the arbitration results shall be binding on both parties in any subsequent litigation or other dispute." (Italics added.)

[3]The record does not disclose whether Coast Plaza "informed" Blue Cross in writing or otherwise and does not explain how a notice given in December of 1998, whether or not in proper form, would satisfy the contractual requirement of a 180-day notice of termination "effective *February 28, 1999.*"

The basic charging allegations upon which each of these causes of action is based are that Blue Cross's Reimbursement Rates, as specified in the Service Agreement, are too low to allow Coast Plaza to recover its costs, much less make a profit. When Coast Plaza sought in, good faith, to renegotiate these rates Blue Cross unreasonably refused to consider or agree to any adequate increase, although it did agree to pay significantly higher rates to other larger hospitals in Southern California. Thus, Coast Plaza alleges Blue Cross discriminates against smaller hospitals in less affluent communities and does so with the purpose of putting them out of business. Indeed, Blue Cross unilaterally stated that if Coast Plaza did not accept a rate increase limited to .8 percent, Blue Cross would be forced to institute "certain administrative actions" which Coast Plaza interpreted to mean that all physicians and providers in the area would be advised not to utilize Coast Plaza for any Blue Cross patient services. All of this, Coast Plaza alleged, was done with the intent to "financially ruin Coast Plaza and other small hospitals who principally serve low-income patients and/or neighborhoods." In effect, Blue Cross was depriving these smaller hospitals of access to a large segment of business controlled by Blue Cross and precluding low-income patients from seeking health care services from the chosen provider in the community. Coast Plaza claims that the Reimbursement Rates imposed by Blue Cross are unreasonable, discriminatory and anticompetitive, and will have a serious adverse financial impact on Coast Plaza. In its complaint, Coast Plaza sought both compensatory and punitive damages as well as injunctive relief.

As soon as permitted under Code of Civil Procedure section 2025, subdivision (a)(2), Coast Plaza initiated discovery proceedings. It served document production subpoenas on six hospitals seeking (1) records of reimbursement from Blue Cross for medical services provided to Blue Cross subscribers, (2) copies of contracts with Blue Cross, (3) internal documents relating to its negotiations with Blue Cross, (4) documents relating to any dispute with Blue Cross regarding reimbursement rates and amounts, and (5) records reflecting Blue Cross's own evaluation of each hospital. Blue Cross objected to these broad discovery requests on a number of grounds, as did at least three of the hospitals involved. On April 1, 1999, Blue Cross filed a motion to quash these subpoenas.

On the same day Blue Cross also filed a petition to compel arbitration of the matters raised by Coast Plaza's complaint. While it is true that the Service Agreement had been terminated by Coast Plaza, effective February 28, 1999, it provided (in par. 12.4) that: "After the effective date of termination, this Agreement *shall remain in effect for the resolution of all*

*matters unresolved as of that date.*" (Italics added.) Although, all of Coast Plaza claims sounded in tort, and its complaint was filed *after* the date of termination, Blue Cross argued that the dispute clearly arose under the Service Agreement and thus fell within the arbitration clause. Coast Plaza opposed the motion, arguing that the arbitration clause was unenforceable as it was unconscionable, did not apply since the Service Agreement had been terminated and, in any event, was precluded because Coast Plaza was seeking injunctive relief. Finally, Coast Plaza also contended that if the matter was sent to arbitration it would be deprived of needed discovery.

On May 14, 1999, the trial court denied the petition to compel arbitration.[4] It appears that the court's ruling was "without prejudice on the grounds that more discovery was necessary to decide the issue." Blue Cross filed a timely appeal on May 26, 1999.

## CONTENTIONS OF THE PARTIES

Blue Cross contends that Coast Plaza's claims constitute a dispute arising under the clear and unambiguous provisions of the Service Agreement's arbitration clause. It also argues that the arbitration provision is not unconscionable and must be enforced as to all of Coast Plaza's claims and prayers for relief, except its request for injunction. Pending conclusion of the arbitration, all proceedings in the trial court should be stayed, including discovery.

Coast Plaza, as already noted, makes three arguments for affirmance of the trial court's order: (1) there is no applicable arbitration provision as the Service Agreement had been terminated before this action was filed, (2) in any event, the arbitration clause is unenforceable as it is unconscionable, and (3) the claim for an injunction precludes any arbitration. Coast Plaza also opposes a stay of proceedings pending conclusion of any arbitration which may be required.

As we explain, we conclude that Blue Cross is correct. This matter should be submitted to arbitration pursuant to the agreement between the parties.

## DISCUSSION

Unsurprisingly, this case is resolved by the application of clear statutory authority and settled decisional law. First, an order denying a petition to

---

[4]On May 14, 1999, the trial court also denied Blue Cross's motion to quash the third party document subpoenas. We thereafter summarily denied Blue Cross's petition for a writ of mandate. However, after Blue Cross filed its notice of appeal from the denial of its petition to compel arbitration, there was a mandatory stay of all proceedings (Code Civ. Proc., § 916) that the trial court refused to lift and thereafter enforced when Coast Plaza attempted to continue pursuit of third party discovery efforts despite the stay.

compel arbitration is an appealable order. (Code Civ. Proc., § 1294, subd. (a); *Wilson v. Kaiser Foundation Hospitals* (1983) 141 Cal.App.3d 891, 895 [190 Cal.Rptr. 649].) Second, the critical issues raised in this case turn on the interpretation of the Service Agreement, particularly the arbitration clause. There is no *factual* dispute as to the language of that agreement. Thus, we are required to determine the legal interpretation to be given that language and that is something we do de novo. We are not bound by the trial court's construction or interpretation. (See *Valsan Partners Limited Partnership v. Calcor Space Facility, Inc.* (1994) 25 Cal.App.4th 809, 817 [30 Cal.Rptr.2d 785]; *Titan Group Inc. v. Sonoma Valley County Sanitation Dist.* (1985) 164 Cal.App.3d 1122, 1127 [211 Cal.Rptr. 62].)

With those basic principles in mind, we now turn to the three issues raised by Coast Plaza.

1. *The Arbitration Clause Applies to the Claims Asserted in Coast Plaza's Complaint*

■ Coast Plaza contends that the tort claims it has asserted against Blue Cross reflect a dispute that is beyond the scope of the arbitration clause. However, an examination of the real nature of that dispute and the broad language of the arbitration clause causes us to reject that argument.

It is clear that the parties agreed to arbitrate "*any* problem or dispute" that arose under or concerned the terms of the Service Agreement. That contractual language is both clear and plain. It is also very broad. In interpreting an unambiguous contractual provision we are bound to give effect to the plain and ordinary meaning of the language used by the parties. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545]; Civ. Code, §§ 1636, 1638 and 1644.) We interpret this language to mean just what it says. The question then becomes, does the action filed by Coast Plaza constitute a "problem or dispute" that arose under or concerns the terms of the Service Agreement? We think the answer to that question must be yes.

Coast Plaza's complaint centers around and is clearly based upon the Reimbursement Rates provided for in the Service Agreement and Blue Cross's alleged refusal to renegotiate them in a manner satisfactory to Coast Plaza.[5] It is alleged that such refusal to renegotiate was the result of Blue Cross's intent and purpose of discriminating against and eventually eliminating smaller hospitals in less affluent communities. Coast Plaza also

---

[5]We summarily reject Coast Plaza's characterization of its negotiations with Blue Cross as being solely related to a "new" contract with satisfactory rates, rather than a *renegotiation* of

complains that "Coast Plaza had prospective economic relationships with future Blue Cross patients and their referring physicians." Coast Plaza claims these relationships with Blue Cross's subscribers were disturbed when Blue Cross declined to renegotiate more favorable rates than those set forth in the Service Agreement. Coast Plaza complains that because it was forced to terminate the Service Agreement with Blue Cross, Coast Plaza now no longer has access to Blue Cross patients.

These claims unquestionably have arisen under the Service Agreement and are inextricably related to its terms and provisions. Coast Plaza argues, however, that the arbitration clause is not implicated because the Service Agreement had been terminated prior to the filing of its complaint and its causes of action were not directed to the *enforcement* of any part of the Service Agreement, but rather to Blue Cross's tortious misconduct. Their prior contractual relationship may serve as context for the dispute, Coast Plaza contends, but it is not otherwise relevant to Coast Plaza's claims. Coast Plaza argues that the dispute arose "from Blue Cross' conduct after the [Service Agreement] was terminated." (Italics added.)

These arguments seem to be premised on the assumption that if one is not suing on a claim that is *based upon* the contract, but rather upon the alleged tortious misconduct of the other contracting party, then the contract's requirement of an arbitration process can be ignored. This is simply wrong and actually amounts more to wishful thinking than careful analysis. For example, to assert, as Coast Plaza seems to do in its brief, that this dispute arose during the two days between the February 28 termination date and the March 2 filing of its complaint is ludicrous.[6] Coast Plaza's own pleading demonstrates that Blue Cross's alleged misconduct took place during the four to five months prior thereto when Coast Plaza was unsuccessfully seeking to renegotiate the terms of the Service Agreement. It was Blue Cross's alleged actions during this period that clearly form the basis of Coast Plaza's claim. The conclusion that this amounts to a "problem or dispute" *arising under* the Service Agreement or *concerns* the terms thereof cannot logically or reasonably be avoided.

Certainly, the fact that Coast Plaza's complaint consists of alleged tort causes of action, rather than contractual claims that are directly based on

---

the existing agreement. This is mere "spin" and ignores the reality of the circumstances presented by this record. Coast Plaza's only problem with the Service Agreement was the Reimbursement Rates provided for therein. It was those Coast Plaza sought to change and it was Blue Cross's alleged unreasonable refusal to make the requested modifications, which serves as the basis for this action.

[6]This position was properly abandoned at oral argument.

the provisions of the Service Agreement, does not assist Coast Plaza's argument. It has long been the rule in California that a broadly worded arbitration clause, such as we have here, may extend to tort claims that may arise under or from the contractual relationship. "There is no requirement that the cause of action arising out of a contractual dispute must be itself contractual. At most, the requirement is that *the dispute* must arise out of contract." (*Crofoot v. Blair Holdings Corp.* (1953) 119 Cal.App.2d 156, 182 [260 P.2d 156], italics added; see also *Hatchwell v. Blue Shield of California* (1988) 198 Cal.App.3d 1027, 1033 [244 Cal.Rptr. 249] [compelling arbitration of all claims against an insurer, stating: "[a]lthough an action for bad faith breach of the covenant of good faith and fair dealing sounds in tort, the duty of good faith and fair dealing derives from and exists solely because of the contractual relationship between the parties."]; *Izzi v. Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1315-1316 [231 Cal.Rptr. 315] [reversing an order denying a petition to compel arbitration, holding that plaintiff's tort claims for fraudulent concealment, negligence and breach of statutory and fiduciary duties were subject to the arbitration clause because the tort claims had their roots in the relationship between the parties created by the contract containing the arbitration clause].)

■   California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration. (*Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 782 [191 Cal.Rptr. 8, 661 P.2d 1088] [the court should " ' " 'indulge every intendment to give effect to' " ' " an arbitration agreement]; *Valsan Partners Limited Partnership v. Calcor Space Facility, Inc., supra,* 25 Cal.App.4th at pp. 816-817; *Titan Group, Inc. v. Sonoma Valley County Sanitation Dist., supra,* 164 Cal.App.3d at p. 1127.) As the Supreme Court recently noted, ". . . the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels . . . ." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10 [10 Cal.Rptr.2d 183, 832 P.2d 899].) This strong policy has resulted in the general rule that arbitration should be upheld "unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute. [Citation.]" (*Bos Material Handling, Inc. v. Crown Controls Corp.* (1982) 137 Cal.App.3d 99, 105 [186 Cal.Rptr. 740] [a terminated dealer's tort causes of action against a manufacturer, including claims for breach of the covenant of good faith and fair dealing, were all required to be arbitrated under their dealership agreement].)

It seems clear that the burden must fall upon the party opposing arbitration to demonstrate that an arbitration clause *cannot* be interpreted to require

arbitration of the dispute. Thus, if there is any reasonable doubt as to whether Coast Plaza's claims come within the Service Agreement's arbitration clause, that doubt must be resolved in favor of arbitration, not against it. (*Hayes Children Leasing Co. v. NCR Corp.* (1995) 37 Cal.App.4th 775, 788 [43 Cal.Rptr.2d 650]; *Vianna v. Doctors' Management Co.* (1994) 27 Cal.App.4th 1186, 1189 [33 Cal.Rptr.2d 188]; *United Transportation Union v. Southern Cal. Rapid Transit Dist.* (1992) 7 Cal.App.4th 804, 808 [9 Cal.Rptr.2d 702].) As Blue Cross argues, in no other way can the courts protect a party's bargained-for right to arbitration. " 'The policy of the law in recognizing arbitration agreements and in providing by statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.' " (*Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at p. 9.)

Code of Civil Procedure section 1281.2, states that if a court determines that an agreement to arbitrate a controversy exists then it "shall order the petitioner and the respondent to arbitrate the controversy [in the absence of circumstances not relevant here]." This language is mandatory, not precatory. (*Cole v. Antelope Valley Union High School Dist.* (1996) 47 Cal.App.4th 1505, 1511-1513 [55 Cal.Rptr.2d 443].) ▮▮ Thus, the trial court erred in refusing to grant Blue Cross's petition to compel[7] unless either or both of Coast Plaza's remaining arguments have merit. We now turn to them.

2. *The Arbitration Clause Is Neither Procedurally Nor Substantively Unconscionable*

▮▮ Coast Plaza argues that the arbitration clause is (1) procedurally unconscionable because Blue Cross was a much larger and financially stronger company than Coast Plaza and thus was able to impose terms (i.e., the Reimbursement Rates) that were unfavorable to Coast Plaza and (2) substantively unconscionable because Coast Plaza's right to discovery, which it might enjoy in a judicial proceeding, is much more restricted, thus permitting Blue Cross to engage in tortious misconduct that Coast Plaza would be unable to uncover. In our view, Coast Plaza misapprehends the principles applicable to the doctrine of unconscionability. Those principles were set out in *Patterson v. ITT Consumer Financial Corp.* (1993) 14 Cal.App.4th 1659 [18 Cal.Rptr.2d 563], where the court reviewed two alternative analytical models of the defense of unconscionability that, it

---

[7]We are not dissuaded from reaching this conclusion by the fact that the trial court's denial of Blue Cross's petition was "without prejudice" pending further discovery into the nature of Coast Plaza's claims. The record before the trial court was sufficient to demonstrate that the arbitration clause applied to Coast Plaza's claims. Nothing more was needed; Code of Civil Procedure section 1281.2 required the trial court to make an order compelling arbitration.

concluded, " 'should lead to the same result.' " (*Id.* at p. 1664; see also *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 925, fn. 9 [216 Cal.Rptr. 345, 702 P.2d 503].)

■ "The first model set out in *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807 [171 Cal.Rptr. 604, 623 P.2d 165] asks initially whether the contract is one of adhesion. (*Id.* at p. 819.) Since a contract of adhesion is still fully enforceable, the inquiry then turns to whether enforcement should be denied. First, enforcement will be denied if the contract or provision falls outside the reasonable expectations of the weaker party. (*Id.* at p. 820,) Second, enforcement will be denied even if it does fall within the reasonable expectations of the parties, but it is unduly oppressive or unconscionable. (*Ibid.*)

"The alternative analytical model [is] set out in *A & M Produce Co.* v. FMC Corp. [(1982)] 135 Cal.App.3d 473 [186 Cal.Rptr. 114]. It sought to define what rendered a contract or a contractual provision unconscionable and hence unenforceable under Civil Code section 1670.5 (135 Cal.App.3d at p. 485.) *A & M* concluded that unconscionability has [both] a procedural and a substantive component. (*Id.* at p. 486.) The procedural component focuses on the factors of oppression and surprise. (*Ibid.*) Oppression results where there is no real negotiation of contract terms because of unequal bargaining power. (*Ibid.*) ' "Surprise" involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms.' (*Ibid.*) The substantive component of unconscionability looks to whether the contract allocates the risks of the bargain in an objectively unreasonable or unexpected manner. (*Id.* at p. 487.) To be unenforceable there must be both substantive and procedural unconscionability, though there may be an inverse relation between the two elements. (*Ibid.*)" (*Patterson v. ITT Consumer Financial Corp., supra,* 14 Cal.App.4th at p. 1664.)

■ It must be remembered that it is the arbitration clause that Coast Plaza claims is unconscionable. Such unconscionability must be measured *as of the time it was made.* (Civ. Code, § 1670.5)[8] What evidence did Coast Plaza present which demonstrated that the arbitration clause was either procedurally or substantively unconscionable? Our review of the record

---

[8]Civil Code section 1670.5 provides: "(a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result. [¶] (b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a

reflects that it consisted of (1) a declaration from its attorney who had no personal involvement with negotiation of the Service Agreement; and (2) two newspaper articles, one of which generously quotes an officer of Coast Plaza's on the subject of his reasons for filing this lawsuit. None of this material was competent evidence sufficient to establish unconscionability as a defense to mandatory arbitration.

Even assuming that a disparity in size and certain economic considerations would permit the Service Agreement to have been adhesive (thus perhaps satisfying the "oppression" prong of the *A & M Produce* case), there is nothing in the showing made by Coast Plaza which prove that it was, or would have been, "surprised" by the clause imposing mandatory arbitration as the required means of dispute resolution. The arbitration clause was prominent and conspicuous as well as simple and straightforward. Its terms and burdens applied equally to both parties. Unlike the arbitration clause condemned in *Patterson v. ITT Consumer Financial Corp., supra,* 14 Cal.App.4th 1659 (where California customers unknowingly agreed to an arbitration that could only be conducted in Minnesota and was subject to undisclosed procedural rules and prepayment of substantial fees before the process could be initiated), there were no unfair, unequal, or undisclosed burdens or hurdles imposed on Coast Plaza; nor does Coast Plaza make any claim that it was unaware of the existence of the arbitration requirement.

We simply see no rational basis to conclude from this record that the requirement of arbitration as the agreed manner of dispute resolution was either a surprise to Coast Plaza or in any way disappointed its reasonable expectations. Moreover, there is nothing about the presence of the arbitration clause in the Service Agreement that would support the conclusion that it was so one-sided as to shock the conscience. The existence of substantive unconscionability depends on such a conclusion. (*Kinney v. United Health-Care Services, Inc.* (1999) 70 Cal.App.4th 1322, 1330 [83 Cal.Rptr.2d 348].)

We also reject the proposition advanced by Coast Plaza that the mere fact that the opportunities for formal (and time-consuming and expensive) discovery are limited under the commercial rules of the American Arbitration Association (which rules expressly apply here) makes the arbitration agreement "one-sided" and so unfair as to "shock the conscience." We are not aware of any case that has ever held that an arbitration provision is substantially unconscionable merely because a party's discovery rights are limited in arbitration. Limited discovery rights are the hallmark of arbitration. (*Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1342

---

reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."

[83 Cal.Rptr.2d 340] ["Unless the parties otherwise agree, the rules of evidence and judicial procedure do not apply" in arbitration].) Discovery is *not* a right in arbitration as it is in judicial proceedings. (*Christensen v. Dewor Developments, supra,* 33 Cal.3d at p. 783, fn. 1 [only arbitrators can order discovery in arbitration proceedings]; see also *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1802 [13 Cal.Rptr.2d 678] [same].) The fact that an arbitration may limit a party's discovery rights is not "substantive unconscionability." If it were, *every* arbitration clause would be subject to an unconscionability challenge on that ground.[9]

We thus must conclude that Coast Plaza cannot avoid arbitration upon a claim of unconscionability. It is simply not supported in this record; nor does Coast Plaza claim that any further discovery would have produced sufficient evidence to change this result.[10]

### 3. *While Coast Plaza's Claim for Injunctive Relief Is Not Subject to Arbitration, Its Other Claims Must Be Addressed in That Forum*

This issue was recently addressed by our Supreme Court in *Broughton v. CIGNA Healthplans* (1999) 21 Cal.4th 1066 [90 Cal.Rptr.2d 334, 988 P.2d 67] (*Broughton*). In a decision under the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq., CLRA), the court held that in a case where a plaintiff was pursuing claims under a statute that provided for both damages and injunctive relief designed to protect the public at large, an arbitration agreement would be enforced as to the damage remedies, but not as to the injunction.

In *Broughton,* a minor and his mother sued their health insurer alleging causes of action for medical malpractice based on severe injuries suffered by the minor at birth. In the suit, the plaintiffs sought monetary damages for such tortious misconduct as well as for violations of the CLRA. In addition, the plaintiffs sought injunctive relief with respect to the insurer's allegedly deceptive advertising practices. The insurer moved to compel arbitration pursuant to the provisions of the health insurance plan it had with the

---

[9]Unquestionably, discovery is limited in arbitrations (except in injury or death cases or where the parties have expressly agreed otherwise). (See Code Civ. Proc., §§ 1283, 1283.05 and 1283.1.) However, given the clarity and prominence of the statutory provisions dealing with this issue, we again see no basis for a claim of surprise or disappointment of reasonable expectations.

[10]Indeed, the discovery that Coast Plaza pursued, and sought to pursue even pending Blue Cross's appeal, was and is related to the *merits* of its claims against Blue Cross. Those evidentiary matters may be addressed in the arbitration, which will take place upon remand.

plaintiffs. The trial court granted the motion as to the malpractice claims but denied it as to the statutory claim under the CLRA. The Supreme Court reversed, concluding that arbitration was an inherently unsuitable forum for the resolution of a claim for an injunction under the CLRA and therefore it could not be arbitrated. (*Broughton, supra,* 21 Cal.4th at p. 1088.) However, the damage claims under the statute, as well as plaintiffs claims for malpractice, were subject to arbitration. (*Ibid.*)

*Broughton* rationalized its conclusion on the ground that there is an inherent conflict between private arbitration before a nonjudicial officer (who would be at an institutional disadvantage in administering a public injunctive remedy) and the underlying purpose of the remedy of injunctive relief under a statutory scheme authorizing a private plaintiff to act in the capacity of a private attorney general to enforce the statute for the benefit of the general public. (*Broughton, supra,* 21 Cal.4th at p. 1082.) Based upon this inherent conflict, the Supreme Court concluded that the Legislature did not intend for the injunctive relief claims under the CLRA to be arbitrated. (*Ibid.*; see also Civ. Code, § 1780, subd. (c) [a CLRA action is to be filed in "any court . . . having jurisdiction of the subject matter"].) The court expressly declined the parties' invitation to reach the broader issue of whether arbitrators have the power to grant injunctive relief at all. (*Broughton, supra,* 21 Cal.4th at p. 1079.)

After deciding that the remedy of injunction for a claim under the CLRA was not arbitrable, the court went on to reject the plaintiff's contention that the inclusion of an inarbitrable remedy in plaintiff's complaint precluded arbitration of all of the plaintiff's claims in the case—the very proposition advanced below by Coast Plaza. (*Broughton, supra,* 21 Cal.4th at p. 1084.) Rather, the court expressly held that the inarbitrable claims or remedies pursued by the plaintiff were severable from the arbitrable claims or remedies and that the plaintiff was required to arbitrate everything *but* the request for injunctive relief under the CLRA. (*Id.* at p. 1088.)

*Broughton* is controlling here. Much like a claim for injunctive relief under the CLRA, a claim for injunctive relief under the unfair competition law, Business and Professions Code section 17200 et seq., is brought by a plaintiff acting in the capacity as a private attorney general. (Bus. & Prof. Code, § 17203 ["Any person who engages, has engaged . . . in unfair competition may be enjoined in any court of competent jurisdiction."].) Although the private litigant controls the litigation of an unfair competition claim, the private litigant is *not* entitled to recover compensatory damages for his own benefit, but only disgorgement of profits made by the defendant

through unfair or deceptive practices in violation of the statutory scheme or restitution to victims of the unfair competition. (*Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 45 [32 Cal.Rptr.2d 200, 876 P.2d 999] [no compensatory damages recoverable for Bus. & Prof. Code, § 17200 claim]; *Bank of the West v. Superior Court, supra,* 2 Cal.4th at p. 1266 [only disgorgement or restitution recoverable, not damages under Bus. & Prof. Code, § 17200].)

In contrast to a Business and Professions Code section 17200 claim, a party suing for violation of section 17020 et seq., under one of the many provisions of the Unfair Practices Act, *may* bring a private right of action for damages suffered directly by the party, and also seek injunctive relief for the protection of the party and the public at large. (See, e.g., Bus. & Prof. Code, § 17070 ["Any person . . . may bring an action to enjoin and restrain any violation of this chapter and, in addition thereto, for the recovery of damages"].)

In this case, Coast Plaza, like the plaintiff in *Broughton*, has requested injunctive relief, not as a separate cause of action, but as a remedy with respect to its stated causes of action for unfair trade practices under section 17020 et seq. and unfair competition under section 17200 et seq. Specifically, Coast Plaza has alleged: "In addition to monetary damages, on behalf of Coast Plaza, and the public, Coast Plaza seeks an injunction prohibiting Blue Cross from providing reimbursement rates at unreasonable and anticompetitive levels." Such relief would certainly constitute a public injunctive remedy within the meaning of *Broughton*. Indeed, we are unable to distinguish Coast Plaza's requests for public injunctive relief from those asserted by the plaintiff in *Broughton*.

Coast Plaza's requests for injunctive relief for the benefit of the public at large as a remedy under the two statutory schemes are the *only* requests for relief that are inarbitrable. Applying *Broughton* here, Coast Plaza *must* arbitrate the remainder of its causes of action and noninjunctive remedies, including its purported entitlement to monetary damages. (*Broughton, supra,* 21 Cal.4th at pp. 1080-1081, fn. 5.)[11] (*Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 624 [105 S.Ct. 3346, 3352, 87 L.Ed.2d 444] [claims designed primarily to compensate injured private party must be arbitrated even though purpose of statutory scheme is to promote a public interest].)

---

[11]*Broughton* actually appears to have left open the question of whether an injunctive claim that stands to benefit a CLRA plaintiff *uniquely without public benefit* would be subject to arbitration. (21 Cal.4th at p. 1081, fn. 5.) However, that is not a question we need address as Coast Plaza is not seeking injunctive relief under either of the relevant statutes which will provide a benefit *unique* to itself.

Thus, we reject Coast Plaza's argument that its claim for public injunctive relief precludes enforcement of the arbitration clause in this case. As we have already concluded that Coast Plaza's claims are subject to the Service Agreement's arbitration clause, we must conclude that all of those claims, save those seeking public injunctive relief, must be severed and resolved in arbitration. (*Broughton, supra,* 21 Cal.4th at p. 1088.)

### 4. *Pending Outcome of the Arbitration, All Further Proceedings in the Trial Court Should Be Stayed*

Upon remand, the trial court will order the claims asserted by Coast Plaza to be arbitrated in accordance with the terms of the arbitration clause. We agree with Blue Cross that pending the conclusion of that arbitration, all further proceedings in the trial court should be stayed. To do otherwise would undermine the very statutory purpose of the agreement to arbitrate. A stay is appropriate where "[i]n the absence of a stay, the continuation of the proceedings in the trial court disrupts the arbitration proceedings and can render them ineffective." (*Federal Ins. Co. v. Superior Court* (1998) 60 Cal.App.4th 1370, 1375 [71 Cal.Rptr.2d 164].)

The only issue that will decided by the trial court is the question of an injunction to preclude Blue Cross's alleged discriminatory and anticompetitive behavior. The litigation of Coast Plaza's right to such relief should be stayed until the arbitration resolves Coast Plaza's substantive causes of action and issues of whether Blue Cross has engaged in unfair trade practices or unfair competition. The outcome of the arbitration on those claims may render entirely moot the issue of Coast Plaza's entitlement to injunctive relief. If no violations of the Business and Professions Code actually occurred and/or no such claim will lie, the arbitrator's award, when reduced to a final judgment, would preclude the right to injunctive relief. (Code Civ. Proc., § 1287.4 [judgment on arbitration award has same force and effect of a judgment in civil action]; *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 831-832 [88 Cal.Rptr.2d 366, 982 P.2d 229] [arbitration award is entitled to res judicata or collateral estoppel effect in subsequent proceedings before the *same* parties].) Without a stay, there is a threat of inconsistent judgments—risk of a judgment on Coast Plaza's substantive claims decided in a private arbitration that is incompatible and inconsistent with the determination by the court of Coast Plaza's entitlement to injunctive relief for those same substantive claims.

### DISPOSITION

The trial court's order of May 14, 1999, denying Blue Cross's petition to compel arbitration is reversed and the matter is remanded with directions to

conduct further proceedings, which are not inconsistent with the views expressed herein. Blue Cross shall recover its costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

On September 7, 2000, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied October 25, 2000.