[No. G032748. Fourth Dist., Div. Three. Aug. 31, 2004.]

CARL W. BUCKHORN, Plaintiff and Respondent, v.
ST. JUDE HERITAGE MEDICAL GROUP et al., Defendants and
Appellants.

COUNSEL

Paul, Hastings, Janofsky & Walker, Peter M. Stone, Daniel M. Glassman and Michael J. Rozak for Defendant and Appellant St. Jude Hospital Yorba Linda.

Sheppard, Mullin, Richter & Hampton, William V. Whelen and Karin Dougan Vogel for Defendant and Appellant St. Jude Heritage Medical Group.

Law Offices of Eric Y. Nishizawa, Eric Y. Nishizawa; Law Offices of Ricardo A. Torres II and Ricardo A. Torres II for Plaintiff and Respondent.

OPINION

**ARONSON, J.**—Defendants St. Jude Heritage Medical Group (Medical Group) and St. Jude Heritage Health Foundation (Health Foundation) appeal from an order denying their motions to compel arbitration in a wrongful termination action filed by Carl Buckhorn, a physician formerly employed by the Medical Group. Buckhorn also sued defendants for various torts allegedly committed after he was discharged, including defamation and interference with prospective economic advantage. Defendants contend Buckhorn is subject to the arbitration clause in his employment agreement, which provides for mandatory arbitration of disputes "concerning the enforcement or the interpretation of any provisions of this Agreement." Buckhorn argues the arbitration clause does not apply because the defendants' tortious conduct occurred after he was terminated.

We reject Buckhorn's temporal test and conclude his tort claims fall within the scope of the arbitration clause because they stem from the contractual relationship between the parties. Because we conclude the order denying arbitration under the employment agreement was erroneous, we do not reach defendants' second argument that Buckhorn, as an employee and part owner of the Medical Group, was bound by a separate arbitration provision contained in a Professional Services Agreement (PSA) between the Medical Group and the Health Foundation. Accordingly, we reverse.

I

FACTS AND PROCEDURAL BACKGROUND

In May 1996, Buckhorn, a board certified internist, entered into a 45-page employment agreement with the Medical Group. The contract contained a

binding arbitration clause, operable *"[i]n the event that a dispute arises between the parties concerning the enforcement or the interpretation of any provisions of this Agreement. . . ."*[1] (Italics added.)

Paragraph 33 of the employment agreement referred to a PSA between the Medical Group and the Health Foundation. The PSA established a "medical practice foundation relationship" between the parties (see Health & Saf. Code, § 1206, subd. (a)), whereby the Health Foundation would provide healthcare facilities and administrative support in exchange for medical services rendered by the Medical Group's physicians. Under paragraph 33, the Health Foundation was named as a third party beneficiary to the employment agreement between Buckhorn and the Medical Group.

In July 1997, the Medical Group and the Health Foundation amended the PSA. As pertinent here, paragraph 17.10 provided for mandatory arbitration of "[a]ny dispute between the parties." In paragraph 17.15, the parties excluded potential third party beneficiary claims under the PSA as follows: *"No Third Party Beneficiaries.* This Agreement has been made and entered into solely for the benefit of [Health Foundation] and [Medical Group], and their respective permitted successors and assigns. Nothing in this Agreement is intended to confer any rights or remedies under or by reason of this Agreement on any persons or entities who are not [parties] to this Agreement. Nothing in this Agreement is intended to relieve or discharge the obligation or liability of any third persons to any party to this Agreement."

The Medical Group terminated Buckhorn's employment in September 2001, and in December 2002, he filed a complaint for fraud in the inducement, wrongful termination, defamation, intentional and negligent interference with prospective business advantage, unfair competition, constructive trust, and accounting.

According to Buckhorn's complaint, he accepted a position with the Medical Group when he was promised his initial employment contract would be replaced later with a compensation formula similar to other partners and shareholders. He was assured he would be permitted to practice medicine "the way 'he practiced medicine,' " which apparently included alternative

---

[1] The arbitration clause reads: "38. *Binding Arbitration.* In the event that a dispute arises between the parties concerning the enforcement or the interpretation of any provisions of this Agreement, such dispute shall be submitted to arbitration for resolution. Such arbitration shall be final and binding, and shall be conducted in Orange County, California, before an arbitrator selected from the Commercial Panel of the American Arbitration Association, and shall be conducted in accordance with the rules of the American Arbitration Association then in effect, except that the parties shall be entitled to the same discovery rights normally available to parties involved in civil suits in Superior Court in Orange County."

therapies. Relying on these promises, he brought patients into the Medical Group and declined to seek immediate compensation for doing so. Defendants led him to believe they would fulfill their promises. He was placed into a "management system where it appeared to him that he was a partner/shareholder/owner," since he managed his own 401(k) retirement account, and funds were withheld from his paycheck for "administrative purposes." In April 1997, he was given "1 share" in the Medical Group and received another share in April 1998.

Buckhorn's relationship with the Medical Group deteriorated over time, and on the evening of September 11, 2001, he was terminated "without cause." The Medical Group subsequently published a letter to Buckhorn's patients explaining that Buckhorn no longer was with the Medical Group, and offered to direct patients to other Medical Group physicians. Buckhorn also alleged that patients were alternatively informed Buckhorn left the group because of marital problems, mental problems, loss of his insurance coverage, and that he was no longer practicing medicine, or that he had " 'just disappeared.' "

Relying on both arbitration clauses, defendants Medical Group and Health Foundation moved to compel arbitration. The Medical Group invoked its right to arbitrate as a party to their employment agreement with Buckhorn, and Health Foundation asserted it was a third party beneficiary of the same contract. As for the PSA, both entities claimed Buckhorn was subject to the arbitration clause as an employee and part owner of the Medical Group.

Buckhorn opposed the motion, arguing the right to arbitrate had been waived when the defendants answered the complaint and failed to make a written demand.[2] He also claimed the PSA arbitration clause did not apply because he was a nonsignatory, and reliance on the PSA "would include the more costly JAMS service" and leave open the possibility he would have to bear opposing costs and fees in violation of *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 99–113 [99 Cal.Rptr.2d 745, 6 P.3d 669]. Neither of these arguments are raised on appeal. Finally, he asserted the arbitration clause in the employment agreement only governed "contract related actions," i.e., his fraudulent inducement and wrongful termination causes of action. Consequently, he argued his tort causes of action were not covered because they were based on damage to his reputation occurring *after* his wrongful termination. He conceded Health Foundation

---

[2] This argument is without merit. "The moving party's mere participation in litigation is not enough" to preclude arbitration (*Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 212 [69 Cal.Rptr.2d 79]), and a respondent may invoke arbitration *either* in its answer *or* by a petition to compel. (See *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1795 [13 Cal.Rptr.2d 678].)

was a third party beneficiary and entitled to invoke the arbitration clause in the employment agreement.

The trial court denied the motion to compel arbitration in August 2003. Focusing solely on the PSA, the court concluded defendants could not invoke the arbitration clause because Buckhorn was not a party to the contract and was specifically excluded as a third party beneficiary. The trial court did not refer to the arbitration clause in the employment agreement in its final order.

Defendants timely filed an appeal from the denial of their petition to compel arbitration. (Code Civ. Proc., § 1294, subd. (a); *Coast Plaza Doctors Hosp. v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 683 [99 Cal.Rptr.2d 809] (*Coast Plaza*).)

II

DISCUSSION

A. *Standard of Review*

■    Determining the validity of an arbitration clause, like the interpretation of any contract, is a question of law unless the issue turns on the credibility of extrinsic evidence. (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1212 [78 Cal.Rptr.2d 533].) No extrinsic evidence was introduced below, therefore, our review is de novo. (*Maggio v. Windward Capital Management Co.* (2000) 80 Cal.App.4th 1210, 1214 [96 Cal.Rptr.2d 168].) The burden is on "the party opposing arbitration to demonstrate that an arbitration clause *cannot* be interpreted to require arbitration of the dispute." (*Coast Plaza, supra*, 83 Cal.App.4th at pp. 686–687.) Any doubt on the issue must be resolved in favor of arbitration. (*Id.* at p. 687.)

B. *The Employment Agreement*

We first turn to the employment contract between Buckhorn and the Medical Group. That agreement provided for arbitration "[i]n the event that a dispute arises between the parties concerning the enforcement or the interpretation of any provisions of this Agreement . . . ." The Medical Group and Health Foundation contend this provision required Buckhorn to arbitrate *all* claims raised in his complaint. Buckhorn argues the scope of the arbitration clause is too narrow.

*Vianna v. Doctors' Management Co.* (1994) 27 Cal.App.4th 1186 [33 Cal.Rptr.2d 188] (*Vianna*), is dispositive. There, the employment agreement

required arbitration of " 'any dispute of any kind whatsoever, regarding the meaning, interpretation or enforcement of the provisions of this Agreement.' " (*Id.* at p. 1188.) The reviewing court concluded the arbitration provision was broad enough to cover the employee's claims for wrongful termination in violation of public policy, breach of the implied covenant of good faith and fair dealing, negligent infliction of emotional distress, and defamation. The court found plaintiff's tort claims were "*rooted* in the employment relationship created by [the] contract." (*Id.* at p. 1190, italics added.) Citing the strong public policy in favor of arbitration, the court explained that "[i]t cannot be said that the arbitration clause clearly does not apply to those additional disputes, and the doubt must be resolved in favor of arbitration." (*Ibid.*)

*Vianna* relied on *Merrick v. Writers Guild of America, West, Inc.* (1982) 130 Cal.App.3d 212 [181 Cal.Rptr. 530]. There, the Court of Appeal concluded that a contract provision requiring arbitration of "[a]ny dispute . . . concerning the interpretation of any of the terms of [the contract] and the application and effect of such terms" encompassed tort claims stemming from the parties' contractual relationship. (*Id.* at p. 217.) Thus, plaintiff's malicious prosecution and abuse of process claims were subject to arbitration because they were not "wholly independent" of the contract between the parties. (*Id.* at p. 219, see also *Tate v. Saratoga Savings & Loan Assn.* (1989) 216 Cal.App.3d 843, 855 [265 Cal.Rptr. 440], disapproved on another ground in *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 381 [36 Cal.Rptr.2d 581, 885 P.2d 994] [arbitration clause covering " 'any controversy aris[ing] between the parties hereto concerning this Joint Venture . . . or the rights and duties of any party under this Agreement' " applied to tort claims having their roots in the contractual relationship between the parties].)

Buckhorn argues *Vianna* is distinguishable because the tort claims surfaced during the employment relationship, while Buckhorn's tort claims for defamation and interference with prospective business advantage are based on events occurring after his termination. This analysis is incorrectly "premised on the assumption that if one is not suing on a claim that is *based upon* the contract, but rather upon the alleged tortious misconduct of the other contracting party, then the contract's requirement of an arbitration process can be ignored. This is simply wrong and actually amounts more to wishful thinking than careful analysis." (*Coast Plaza, supra,* 83 Cal.App.4th at p. 685.) Here, Buckhorn's temporal test misconstrues the applicable standard. The issue turns on whether the tort claims are "rooted" in the contractual relationship between the parties, not when they occurred. For example, Buckhorn's claims for intentional and negligent interference with prospective economic advantage were based on an expectation of future income from his patients. But Buckhorn's patients consulted him in his capacity as an employee of the Medical Group and therefore the employment agreement would inform the

extent of any economic interest. ■ Because Buckhorn failed to demonstrate his tort claims were "wholly independent" of the employment agreement, and any doubts must be resolved in favor of arbitration (*Vianna, supra,* 27 Cal.App.4th at p. 1189), we conclude all of Buckhorn's claims must be submitted to arbitration.

Medical Group and Health Foundation alternatively asserted a right to arbitrate under the PSA. Because defendants obtain the relief they requested under the employment agreement, resolution of this issue is moot.

## III

## DISPOSITION

The order is reversed and the case remanded with directions to grant the petition compelling arbitration under the employment agreement. Defendants are awarded costs on appeal.

O'Leary, Acting P. J., and Fybel, J., concurred.