Filed 2/3/21  Kapoor v. Laserway Management CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SHALINI KAPOOR, | B298014 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC701931) |
| v. | |
| LASERWAY MANAGEMENT, et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Randolph Hammock, Judge.  Affirmed.

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg, & Rhow, Naeun Rim, Paul S. Chan for Defendants and Appellants.

Skiermont Derby, Paul B. Derby, Mane Sardaryan and Hajir Ardebili for Plaintiff and Respondent.

Shalini Kapoor, M.D., entered into a "Medical Director Services Agreement" (Director Agreement) with LaserAway Medical Group, Inc. ("LA Medical").  The Director Agreement contained an arbitration provision.  So did a "Shareholders Agreement" Kapoor later signed with LA Medical shareholders Roy Winston, M.D., and Ritu Chopra, M.D.

Several years later, Scott Heckmann, equity owner of LaserAway Management, LLC ("LA Management"), who had not signed either the Director Agreement or the Shareholders Agreement, notified Kapoor that "our contract" was cancelled. Winston later confirmed the Director Agreement was terminated. Kapoor subsequently filed a complaint asserting 13 causes of action against LA Management, LA Medical, Heckmann, Winston, and Chopra (collectively defendants).

Defendants moved to compel arbitration of Kapoor's claims under the arbitration provisions in the Director Agreement and the Shareholders Agreement.  Rejecting Kapoor's contentions that defendants had waived the right to arbitrate and that the arbitration provisions were unconscionable, the superior court granted the motions in part. It found arbitrable Kapoor's first cause of action for breach of contract against LA Medical, second cause of action for breach of the implied covenant of good faith and fair dealing against LA Medical, third cause of action for breach of fiduciary duty against LA Medical, Winston, and Chopra, and thirteenth cause of action for declaratory relief against LA Medical, Winston, and Chopra.  The court otherwise denied the motions on the grounds that the remaining causes of action were outside the scope of the arbitration provisions, which it characterized as narrow.

In this appeal, defendants argue that all of Kapoor's causes of action are within the scope of the arbitration provision in the Director Agreement. They argue that the plain language of the provision is expansive, and further rely on *Vianna v. Doctors' Management Company* (1994) 27 Cal.App.4th 1186 (*Vianna*) and *Buckhorn v. St. Jude Heritage Medical Group* (2004) 121 Cal.App.4th 1401 (*Buckhorn*), to argue that all the claims are "rooted in" the Director Agreement. Defendants also contend that Kapoor's tenth and eleventh causes of action against Heckmann and LA Management, for intentional interference with contractual relations and intentional interference with prospective economic advantage, are arbitrable under the Shareholders Agreement. We reject these contentions and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Factual Allegations*

Kapoor filed the operative complaint in this action on April 13, 2018. The following allegations are taken from that complaint; we do not pass on their veracity. (See *Turtle Ridge Media Group, Inc. v. Pacific Bell Directory* (2006) 140 Cal.App.4th 828, 830, fn. 1.)

Kapoor is a medical doctor who specializes in "oculoplastic techniques and aesthetics, including the use of lasers." Winston and Chopra are also medical doctors. Kapoor, Winston, and Chopra are the shareholders of LA Medical, a chain of medical clinics offering cosmetic medical treatments. LA Management is "a management service company with the purported role of overseeing the *non-medical* aspects of [LA] Medical's business." Heckmann owns a "substantial equity interest" in LA Management. He is not a medical doctor.

3

In 2007, Kapoor appeared on a reality television show and performed "a medical, body contouring treatment on a reality television personality." After seeing the show, Heckmann contacted Kapoor about joining LA Medical. Kapoor accepted the offer and entered into the Director Agreement with LA Medical on September 12, 2008.

Under the Director Agreement, Kapoor assumed responsibility "for ensuring that all medical duties and responsibilities" of LA Medical were "fulfilled in the day-to-day operations of [LA Medical] and its medical clinics" for a one-year term beginning September 15, 2008. The term would automatically renew each year, "unless either party notifies the other, in writing, of its intention to terminate this Agreement not late [*sic*] than thirty (30) days prior to the ending date of the initial term or any annual extension thereof." In addition to setting forth Kapoor's monthly fee and signing bonus, the Director Agreement provided that then-sole shareholder Winston would sell Kapoor a 10 percent share of LA Medical. An arbitration provision in the Director Agreement provided, in pertinent part, that "Any controversy between the parties to this agreement involving the construction or application of any of the terms, covenants, or conditions of this agreement will, on the written request of one party served on the other, be submitted to arbitration."

In or around 2010, Kapoor closed her own medical practice to fully devote her time to LA Medical. In consideration for her "growing responsibilities and dedicated service," Kapoor received a larger ownership interest in LA Medical. The Shareholders Agreement, dated May 6, 2011, increased Kapoor's ownership share of LA Medical to 40 percent. Other signatories Winston

4

and Chopra retained 40 percent and 20 percent ownership, respectively.  The Shareholders Agreement provided in pertinent part that "Any controversy or claim arising out of this Agreement shall be settled by arbitration conducted in accordance with the Rules of the American Arbitration Association and judgment upon the award may be entered in any court having jurisdiction."

Kapoor found her work at LA Medical rewarding until approximately mid-2015.  At that time, a new doctor, Will Kirby, joined LA Medical.  Kirby is male and approximately five years younger than Kapoor.  Kapoor alleges that Heckmann hired Kirby in violation of California's public policy against the corporate practice of medicine.  Kapoor further alleges that Heckmann hired Kirby because Heckmann believed she was "too emotional" to continue to oversee other physicians effectively and Kirby would be "more malleable" and "would not challenge Heckmann's attempt to involve himself in the medical side of the business.  This, in turn, would allow Heckmann to put the profitability of LaserAway *Management* ahead of LaserAway *Medical*'s business interests and the best interests of LaserAway Medical's patients."

After Kirby joined LA Medical, Heckmann "began to inject himself aggressively into the medical aspects" of the business.  Heckmann put Kirby in charge of revising LA Medical's medical "protocols" and dismissed concerns Kapoor and other physicians raised about the protocols.  Heckmann insisted that Kapoor approve the protocols, and threatened that she would lose her job if she did not.  He characterized complaints from women as "typical women shit."

In early 2016, Heckmann began writing and approving "procedures" himself despite his lack of a medical degree.  He also

5

directed LA Medical personnel to use free samples of products during procedures involving paying customers. After Kapoor expressed concern about these practices, Heckmann's treatment of her worsened. Kapoor developed medical problems, of which Heckmann was dismissive. In June 2016, Heckmann cancelled a business trip Kapoor was supposed to make to San Diego. Heckmann told Kapoor not to challenge his decision because he was "the president and CEO." Heckmann subsequently accused Kapoor of complaining too much and sent her a text message "canceling our contract." Kapoor received a letter from Winston "formalizing" the termination of the Director Agreement two days later. Kapoor alleges that Winston "simply acted as a straw-man, through which Heckmann . . . exercised de facto control over LaserAway Medical in clear violation of California law."

### Causes of Action

On April 13, 2018, Kapoor filed a complaint setting forth the above allegations and asserting thirteen causes of action against defendants. In the first cause of action for breach of contract, Kapoor alleged that LA Medical breached the Director Agreement. In the second cause of action for breach of the implied covenant of good faith and fair dealing, Kapoor alleged that LA Medical unfairly interfered with her right to receive the benefits to which she was entitled under the Director Agreement. In the third cause of action for breach of fiduciary duty, Kapoor alleged that Winston, Chopra, and LA Medical owed her duties as a shareholder of LA Medical and breached those duties by allowing Heckmann and LA Management to exercise de facto control over LA Medical.

Kapoor's fourth through ninth causes of action alleged wrongful termination and discrimination. In the fourth cause of

action for termination in violation of California Business and Professions Code section 2056,[1] Kapoor alleged that LA Management, LA Medical, Heckmann, and Winston took adverse employment actions against her in retaliation for her advocacy of appropriate medical care. In the fifth cause of action for wrongful termination in violation of public policy against the corporate practice of medicine, Kapoor alleged that LA Management, LA Medical, Heckmann, and Winston violated that public policy by taking adverse action against her, including termination, in response to her complaints about Heckmann and LA Management. She further alleged that Heckmann's termination of her itself violated the public policy against the corporate practice of medicine. In the sixth cause of action for discrimination on the basis of gender in violation of FEHA,[2] Kapoor alleged that LA Management, LA Medical, Heckmann, and Winston took adverse employment actions against her that were substantially motivated by her gender. In the seventh cause of action for harassment on the basis of gender in violation of FEHA, Kapoor alleged that LA Management, LA Medical,

---

[1]The purpose of Business and Professions Code section 2056 "is to provide protection against retaliation for physicians who advocate for medically appropriate health care for their patients." (Bus. & Prof. Code, § 2056, subd. (a).) It provides that the state has a public policy of encouraging physicians and surgeons "to advocate for medically appropriate health care for [their] patients," including by "protest[ing] a decision, policy, or practice that the physician . . . reasonably believes impairs the physician's ability to provide medically appropriate health care to his or her patients." (*Id.* § 2056, subd. (b).)

[2]FEHA is the California Fair Employment and Housing Act, codified at Government Code section 12900, et seq.

7

Heckmann, and Winston subjected her to "severe, unwanted harassing conduct because she is a woman." In the eighth cause of action for violation of California Labor Code section 1102.5,[3] Kapoor alleged that LA Management, LA Medical, Heckmann, and Winston retaliated against her for voicing concerns about actions she believed to be unlawful. In the ninth cause of action for wrongful termination in violation of public policy, specifically Labor Code section 1102.5 and FEHA, Kapoor alleged that LA Management, LA Medical, Heckmann, and Winston wrongfully terminated her based on her gender and/or disclosure of information regarding an unlawful act.

In the tenth cause of action for intentional interference with contractual relations, Kapoor alleged that Heckmann, acting on behalf of LA Management, disrupted her contractual relationship with LA Medical by "interfering with, and improperly seeking to control, the medical aspects of LaserAway Medical's business"; "berat[ing], harass[ing], and threaten[ing]" Kapoor "when she voiced concerns about [his] interference"; and "ultimately purport[ing] to terminate Plaintiff's contract with LaserAway Medical after directing Plaintiff not to attend a regularly scheduled meeting with LaserAway Medical's personnel in San Diego." Kapoor made virtually identical allegations against Heckmann and LA Management in the eleventh cause of action for intentional interference with prospective economic advantage. In the twelfth cause of action for conversion, Kapoor alleged that LA Medical and LA Management intentionally and substantially interfered with her possession of "certain VelaShape laser equipment" that she "brought with her to

_____

[3]Labor Code section 1102.5 prohibits retaliation against whistleblowers. (See Lab. Code, § 1102.5, subd. (b).)

LaserAway Medical to use for the services provided to LaserAway Medical's patients." Finally, in the thirteenth cause of action for declaratory relief, Kapoor requested a determination of her rights and duties concerning her shares of LA Medical. She specifically cited to several provisions of the Shareholders Agreement in this cause of action.

### Motions to Compel Arbitration

Defendants filed two motions to compel arbitration of Kapoor's claims. The first motion invoked the arbitration provision in the Director Agreement, which required arbitration of "[a]ny controversy between the parties to this agreement involving the construction or application of any of the terms, covenants, or conditions of this agreement."

Defendants contended that "at least nine" of Kapoor's thirteen causes of action—the first, second, fourth through ninth, and twelfth—were subject to this arbitration provision, which they characterized as "broad." They asserted that the first cause of action for breach of contract and second cause of action for breach of the implied covenant of good faith and fair dealing were subject to arbitration because they were expressly premised upon alleged breaches of the Director Agreement. Defendants contended the fourth through ninth causes action, all of which alleged wrongful termination or mistreatment in violation of statutes or public policy, "are all based on and arise out of Dr. Kapoor's position as Medical Director under the Director Agreement and her allegation that she was wrongfully terminated from this position." They asserted that Kapoor "alleges harassment and wrongful termination as an 'employee' of LA Medical. But Dr. Kapoor was an independent contractor and her role as Medical Director was governed exclusively by the

9

Director Agreement," which contained provisions defining the scope of her duties and processes by which she could be terminated. Finally, they argued that the twelfth cause of action for conversion was subject to arbitration because Kapoor "would only have brought such equipment to LaserAway while engaged as a Medical Director under the Director Agreement."

Defendants did not argue that Kapoor's remaining causes of action (third, tenth, eleventh, and thirteenth) were subject to arbitration under the Director Agreement. Instead, they addressed those causes of action in their second, concurrently filed motion to compel arbitration under the Shareholders Agreement, which required arbitration of "[a]ny controversy or claim arising out of this agreement." They contended that the Shareholders Agreement "governs and controls all rights, duties, and obligations of Dr. Kapoor as an alleged shareholder of LA Medical, including the purchase, delivery, transfer, buyout, repurchase, termination, valuation of the shares, and rights to dividends of LA Medical." Therefore, they argued, Kapoor's third, tenth, eleventh, and thirteenth causes of action were "rooted in"" the Shareholder Agreement and therefore subject to its "broad arbitration provision."

Defendants argued that the third cause of action for breach of fiduciary duty was "rooted in" the Shareholders Agreement because Winston and Chopra would not owe Kapoor any fiduciary duties absent the Shareholders Agreement. They contended that the tenth cause of action for intentional interference with contractual relations and prospective economic advantage against Heckmann and LA Management "primarily deals with (i) Dr. Kapoor's rights as an alleged shareholder and (ii) the buyout provision in the Shareholders Agreement." They similarly

10

argued that the "gravamen" of the eleventh cause of action for intentional interference with prospective economic advantage against Heckmann and LA Medical was a "determination of what rights and obligations Dr. Kapoor has under the Shareholders Agreement." Defendants contended the thirteenth cause of action for declaratory relief "involves the interpretation and application of the terms of the Shareholders Agreement and the buyback obligations under the agreement."

***Oppositions and Further Briefing***

Kapoor opposed both motions. In both oppositions, she raised three arguments against arbitration. First, Kapoor argued that defendants waived the right to compel arbitration by delaying their enforcement of and acting in a manner inconsistent with the arbitration provisions. Second, she argued that the provisions were unenforceable because they were unconscionable. Finally, she argued that her claims were beyond the scope of the arbitration provisions, which she characterized as "narrow."

Defendants filed replies in support of both motions.

The court heard the motions on February 25, 2019. After hearing argument from both sides, the court ordered supplemental briefing on *Vianna*, *supra*, 27 Cal.App.4th 1186, and *Howard v. Goldbloom* (2018) 30 Cal.App.5th 659 (*Howard*) as related to the Director Agreement, and whether the tenth and eleventh causes of action were within the scope of the Shareholders Agreement. Defendants' supplemental brief argued that Kapoor's fourth through ninth causes of action for wrongful termination and mistreatment were "rooted in" and therefore arbitrable under the Director Agreement, and that her tenth and eleventh causes of action for intentional interference "arose out

11

of" the Shareholder Agreement. Kapoor contended that both arbitration provisions were narrow, such that her fourth through ninth causes of action were outside the scope of the Director Agreement and her tenth and eleventh causes of action were outside the scope of the Shareholder Agreement. Both parties subsequently filed short sur-replies in support of their positions.

### *Ruling*

In a ruling dated April 2, 2019, the court granted the motions in part and denied them in part. The court first considered and rejected Kapoor's argument that defendants by their litigation conduct waived any right to arbitrate.

It then considered the scope of the arbitration provision in the Director Agreement, which required arbitration of "[a]ny controversy between the parties to this agreement involving the construction or application of any of the terms, covenants, or conditions of this agreement." The court concluded that this provision "does not contain language which the courts have interpreted broadly, i.e., arising under or related to. Rather, the arbitration clause uses language . . . more akin to the language the courts have interpreted narrowly to apply to the contract itself, i.e., arising from or arising out of." The court rejected defendants' reliance on *Vianna*, *supra*, 27 Cal.App.4th 1186 and *Buckhorn*, *supra*, 121 Cal.App.4th 1401, finding those cases "inapplicable" because they required a "threshold finding that the arbitration clause is broad." Relying instead on *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1051-1054 (*Ramos*) and *Howard*, *supra*, 30 Cal.App.5th 659, the court construed the provision "narrowly[,] to apply only to claims relating to breach of the Director Agreement, but not as to claims for violation of statutory rights or the common law tort for wrongful termination

12

in violation of public policy." Only the first cause of action for breach of contract and the second cause of action for breach of the implied covenant of good faith and fair dealing met this standard; the court concluded that the fourth through ninth causes of action for wrongful termination and the twelfth cause of action for conversion were not subject to arbitration under the Director Agreement.

The court then considered whether the provision should be enforced, or whether Kapoor had demonstrated its unconscionability. The court concluded that the provision at worst, "presents a minimal degree of procedural unconscionability." It also found "little, if any, substantive unconscionability." The court thus granted the motion to compel arbitration as to the first and second causes of action.

The court conducted a similar analysis of the arbitration provision in the Shareholders Agreement, which required arbitration of "[a]ny controversy or claim arising out of this Agreement." As in its analysis of the Director Agreement, the court relied on *Ramos*, *supra*, 8 Cal.App.5th at pp. 1051-1054 for the proposition that the phrase "arising out of" is typically interpreted narrowly. It thus concluded that the arbitration provision in the Shareholders Agreement "must be construed narrowly to apply only to claims relating to claims [*sic*] arising out of the Shareholders Agreement, but not as to claims for torts against Heckmann and LaserAway Management, which are non-parties to the Shareholders Agreement." The court granted the motion as to the third cause of action for breach of fiduciary duty and the thirteenth cause of action for declaratory relief, and denied it as to the tenth and eleventh causes of action for intentional interference by Heckmann and LA Management. The

13

court further found that the provision was not unconscionable.  It stayed litigation of the fourth through twelfth causes of action pending arbitration of the first, second, third, and thirteenth causes of action.

Defendants timely appealed. Kapoor did not cross-appeal.[4]

## DISCUSSION

Defendants contend that all of Kapoor's claims are subject to arbitration, "because they (1) involve the application of the Director Agreement, including the invocation of termination procedures, or (2) arise out of the buyout provisions in the Shareholders Agreement."  They further argue that *Vianna*, *supra*, 27 Cal.App.4th 1186 and *Buckhorn*, *supra*, 121 Cal.App.4th 1401, which they characterize as "the only cases on point," "mandate" this conclusion "with respect to the Director Agreement."  Because we conclude none of these contentions prevails, we need not reach their argument that the trial court erred by holding that the arbitration provision in the Shareholder Agreement could not be applied to non-signatories of that document.

## I.    Legal Principles

California has a strong public policy in favor of arbitration. (*Rice v. Downs* (2016) 248 Cal.App.4th 175, 185 (*Rice*).)  As a result, doubts regarding the arbitrability of a dispute generally are resolved in favor of arbitration, unless the arbitration provision is not susceptible to an interpretation covering the dispute.  (*Ibid.*; *Coast Plaza Doctors Hospital v. Blue Cross of*

---

[4]We accordingly do not consider her argument that the arbitration provision of the Director Agreement is unconscionable. (See *Transworld Systems, Inc. v. County of Sonoma* (2000) 78 Cal.App.4th 713, 716 & fn. 4.)

14

*California* (2000) 83 Cal.App.4th 677, 686 (*Coast Plaza*).) The party opposing arbitration bears the burden of showing that the provision at issue cannot be interpreted to cover the claims in her complaint. (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 890 (*Aanderud*).) "There is no public policy, however, that favors the arbitration of disputes the parties did not agree to arbitrate." (*Ibid.*)

"'When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.' [Citation.]" (*Aanderud, supra*, 13 Cal.App.5th at p. 890.) "Thus, an arbitration agreement is governed by contract law and is construed like other contracts to give effect to the intention of the parties." (*Ibid.*; see also *Rice, supra*, 248 Cal.App.4th at p. 185.) Under the "ordinary rules of contract interpretation," the court attempts to effectuate the parties' intentions by carefully examining the operative contractual terms. (*Rice, supra*, 248 Cal.App.4th at p. 185.) It considers the usual and ordinary meaning of the language and the circumstances under which the agreement was made. (*Ibid.*) It also considers the entirety of the contract, giving effect to every part to the extent practicable and using each part to interpret the others. (*Id.* at p. 186.) Ultimately, the question is whether the terms of the specific arbitration provision under consideration reasonably cover the dispute as to which arbitration is requested. (*Id.* at p. 185; see also *Bono v. David* (2007) 147 Cal.App.4th 1055, 1063 (*Bono*).)

Whether a particular dispute is within the scope of an arbitration provision "rests substantially on whether the clause in question is 'broad' or 'narrow.'" (*Bono, supra*, 147 Cal.App.4th

at p. 1067.)  Broad arbitration provisions use language such as "any claim arising from or related to this agreement," or "arising in connection with the [a]greement."  (*Rice, supra*, 248 Cal.App.4th at p. 186.)  "It has long been the rule in California that a broadly worded arbitration clause . . . may extend to tort claims that may arise under or from the contractual relationship. 'There is no requirement that the cause of action arising out of a contractual dispute must be itself contractual.  At most, the requirement is that *the dispute* must arise out of contract.' [Citations.]"  (*Coast Plaza, supra*, 83 Cal.App.4th at p. 686.)  Put another way, broad arbitration provisions may encompass tort claims that are "rooted in" or "touch" the contractual relationship between the parties.  (*Rice, supra*, 248 Cal.App.4th at p. 186; *Howard, supra*, 30 Cal.App.5th at p. 664; see also *Vianna, supra*, 27 Cal.App.4th at p. 1190; *Buckhorn, supra*, 121 Cal.App.4th at p. 1407.)

Narrow arbitration provisions, in contrast, use language tying them more closely to the contract at issue, such as "arising from" or "arising under" the parties' agreement.  (*Rice, supra*, 248 Cal.App.4th at p. 186.)  Narrow arbitration provisions generally do not reach claims extending beyond the corners of the contract.[5]

---

[5]In their opening brief and during oral argument, defendants cited *Efund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311 (*Efund*) for the proposition that a provision requiring arbitration of  "[a]ny dispute or other disagreement arising from or out of this . . . [a]greement" may be broad enough to encompass tort claims."  The holding *in Efund* does not negate the general rule.  As *Rice* notes, phrases such as "any dispute" or "any controversy" are not alone determinative; the words following them, such as "arising out of," "concerning," or

They "encompass only disputes relating to the interpretation and performance of the agreement." (*Id.* at p. 187.)

Because there is no factual dispute regarding the terms of the agreements at issue, we review the superior court's application of these principles and interpretation of the arbitration provisions de novo. (*Howard*, *supra*, 30 Cal.App.5th at p. 664; *Rice*, *supra*, 248 Cal.App.4th at p. 185.)

## II. The Director Agreement

### A. Plain Language

The arbitration provision in the Director Agreement states that "Any controversy between the parties to this agreement involving the construction or application of any of the terms, covenants, or conditions of this agreement will, on the written request of one party served on the other, be submitted to arbitration." Defendants first contend that it is "clear from the plain language that the parties intended to arbitrate *all* disputes involving the construction or application of the terms of the agreement—regardless of whether the claims sound in tort or contract." They point to the use of the phrase "any controversy." While acknowledging that it is "necessarily modified by the phrase involving the construction or application of the terms of the agreement," they contend that the other terms in the Director Agreement "broadly encompass Dr. Kapoor's work obligations, her compensation, and the circumstances under which she could be terminated," and all of Kapoor's claims "involve" those concepts. Kapoor responds that the plain terms of the provision reach "only claims that require construing or applying the provisions of the Director Agreement."

"involving" are also crucial to a provision's scope. (*Rice, supra*, 248 Cal.App.4th at p. 187.)

17

Kapoor has the better of this argument.  The plain language of the arbitration provision renders it applicable only to controversies "involving the construction or application of any of the terms, covenants, or conditions of this agreement."  Such language has been characterized as "very specific and narrow." (*Rice*, *supra*, 248 Cal.App.4th at pp. 189-190 [discussing *Bono*, *supra*, 147 Cal.App.4th at pp. 1058, 1067, 1069].)  In *Bono*, the arbitration clause at issue appeared in a real estate development contract and encompassed "[a]ny controversy among the parties involving the construction or application of any provision of this Agreement.'  (*Bono*, *supra*, 147 Cal.App.4th at p. 1058.)  The court concluded that a defamation claim was outside its scope because it did not "involve the construction or application of any provision of the real property agreement."  (*Id.* at p. 1067.)  The same is true of Kapoor's claims at issue here: none of them involves the construction or application of the Director Agreement.

The fourth, fifth, eighth, and ninth causes of action allege that defendants, with the exception of Chopra, took adverse employment actions, including termination, against Kapoor in violation of state law and public policy.  The sixth and seventh causes of action allege that the same subset of defendants violated FEHA by discriminating against and harassing Kapoor on the basis of her gender.  The twelfth cause of action for conversion alleges that LA Medical and LA Management interfered with Kapoor's property by maintaining possession of her medical equipment.  None of these causes of action involves the "construction or application of any of the terms, covenants, or conditions" of the Director Agreement.  Indeed, none of them even mentions the Director Agreement.

18

Defendants contend that "a fact-finder must consider whether Dr. Kapoor was complying with her contractual duties, whether she was entitled to the compensation detailed in the contract, and whether she was properly terminated under the Director Agreement" to resolve any of these claims. Defendants identify as the relevant provisions "(1) the services provisions in Paragraph 2, which describe Dr. Kapoor's duties, (2) the compensation provisions in Paragraph 3, which set forth some of the privileges of which Dr. Kapoor claims she was deprived, and (3) the termination provisions in Paragraphs 1 and 8 of the Director Agreement, which permit a party to terminate the agreement without cause with 30 days' written notice." Nothing in those provisions addresses state law, public policy, or the ownership of property Kapoor brought to LA Medical.

Paragraph 1, "Period of Employment," states that the term of the Director Agreement is one year, and that it will automatically renew unless either party terminates it in writing at least 30 days prior to the renewal date. Paragraph 2, "Services," states that Kapoor will hold the title of Medical Director; bear responsibility for ensuring fulfillment of "all medical duties and responsibilities" of LA Medical; make monthly visits to each LA Medical location in the greater Los Angeles area; be available by telephone or in person at least 10 hours per month, including the time spent on her monthly visits; will be permitted to maintain her personal practice; will not be responsible for LA Medical locations outside Los Angeles, Orange, and San Diego Counties; and acknowledges that she is being employed as an independent contractor.[6] Paragraph 3,

---

[6]Defendants contend that "many of Dr. Kapoor's tort claims require a threshold determination that she was an 'employee' and

"Compensation and Expense Reimbursement," sets forth the amounts of Kapoor's monthly compensation and signing bonus, as well as the process by which she may seek reimbursement of expenses. Paragraph 8, "Termination," states that the Director Agreement may be terminated by either party for cause or by breach, by Kapoor's death, by Kapoor's loss of medical license, or by 30 days' written notice. Kapoor's claims that she was retaliated against, discriminated against, harassed, deprived of her property, and wrongfully terminated do not "involve" anything in these paragraphs. As Kapoor argues, her claims "seek[ ] to vindicate rights that originate and exist <u>outside</u> of the Director Agreement and do not depend upon the interpretation or application of that agreement's terms." We find it telling that defendants make no attempt to specifically link any of the contractual language to any of the causes of action.

Defendants also contend that Kapoor's tenth cause of action for intentional interference with contractual relations and her eleventh cause of action for intentional interference with prospective economic advantage are subject to arbitration under

not, as stated in the Director Agreement, an independent contractor," and resolution of that issue "will necessarily involve the construction of the terms of the Director Agreement." Even if some of the claims require Kapoor to establish that she is an employee and not an independent contractor, the parties' contractual label "is not dispositive and will be ignored if their actual conduct establishes a different relationship." (*Estrada v. FedEx Ground Package System, Inc.* (2007) 154 Cal.App.4th 1, 11.) The terms of the Director Agreement accordingly may not be involved in this determination. We are not persuaded otherwise by defendants' oral arguments regarding *Elijahjuan v. Superior Court* (2012) 210 Cal.App.4th 15 and statements Kapoor made below in connection with her unconscionability argument.

20

the Director Agreement.  Defendants did not make this argument below; they argued only that the first, second, fourth through ninth, and twelfth causes of action were arbitrable under the Director Agreement.  As a general rule, a party may not raise a new contention for the first time on appeal.  However, we may exercise our discretion to consider such an argument where, as here, the new theory presents a question of law to be applied to undisputed facts in the record.  (*Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 51.)  We do so, and conclude these claims also do not "involv[e] the construction or application of any of the terms, covenants, or conditions" of the Director Agreement.  The gravamen of the tenth and eleventh causes of action is Heckmann's alleged misconduct in obstructing, harassing, and terminating Kapoor, not the particulars of the underlying contract.

Defendants argue that the "absence of any provision in the contract regarding jurisdiction or courts of law" in the Director Agreement "indicates that they did not contemplate litigating any claim in court, whether sounding in contract or tort."  The single case they cite in support of this proposition, *Rice, supra*, 248 Cal.App.4th at p. 188, is not persuasive on this point.  In *Rice*, the court "contrast[ed] the narrowly worded arbitration clause with the immediately preceding, expansively worded jurisdiction clause" and concluded that the comparison made clear that the parties intended to arbitrate only a limited range of claims.  (*Ibid.*)  The court observed that the "parties could easily have copied and pasted the broader text from the jurisdiction clause to the arbitration clause, but chose not to do so.  This omission has significance. . . ." (*Id.* at pp. 188-189.)  The significance of the jurisdiction clause thus was not its mere

21

presence, but the expansive language it used vis-à-vis the arbitration clause.  The Director Agreement, which lacks a comparable clause governing jurisdiction or venue, does not, as defendants suggest, "present[ ] the opposite situation."  We cannot reach a conclusion about the parties' intent by comparing the arbitration provision to a jurisdiction clause that does not exist.

### B. *Vianna* and *Buckhorn*

Defendants contend that *Vianna*, *supra*, 27 Cal.App.4th 1186 and *Buckhorn*, *supra*, 121 Cal.App.4th 1401 require the superior court to send all of Kapoor's claims to arbitration because they "have facts that are the most similar to those at issue here and are dispositive."  The superior court held that the cases were inapplicable without a threshold finding that the language of the arbitration provisions is broad.  We agree with the superior court's analysis.

In *Vianna*, *supra*, 27 Cal.App.4th at p. 1188, plaintiff Vianna worked as the Vice President for Human Resources at defendant The Doctors' Management Company (Doctors).  Vianna resigned after Doctors' chairperson, president, and CEO accused him of "hitting on" another employee's husband.  (*Ibid.*)  Vianna subsequently filed a complaint alleging that Doctors terminated him in violation of public policy, breached the implied covenant of good faith and fair dealing, negligently inflicted emotional distress, and defamed him.  (*Id.* at p. 1189.)  Doctors moved to compel arbitration based on the arbitration provision in Vianna's employment contract:  "[i]n the event of any dispute of any kind whatsoever regarding the meaning, interpretation or enforcement of the provisions of this Agreement, both parties agree that the matter shall be resolved through the use of binding arbitration as

provided in California Code of Civil Procedure 1280 *et seq*." (*Id.* at p. 1188.) The superior court denied the motion, but the appellate court reversed. It concluded that the parties "at least arguably agreed" to arbitrate Vianna's tort claims by requiring arbitration of "any dispute of any kind whatsoever" over the terms of the contract. (*Id.* at p. 1190.) The appellate court added that all of Vianna's claims were "rooted in the employment relationship created by their contact." (*Ibid.*)

*Buckhorn, supra*, 121 Cal.App.4th 1401, was decided ten years after *Vianna* and followed it closely. In *Buckhorn*, plaintiff Buckhorn, a physician, was terminated by his employer, St. Jude Heritage Medical Group (Medical Group), of which he was a shareholder. (*Buckhorn, supra*, 121 Cal.App.4th at p. 1405.) Buckhorn filed a complaint against Medical Group asserting causes of action for fraud in the inducement, wrongful termination, defamation, intentional and negligent interference with prospective business advantage, unfair competition, constructive trust, and accounting. (*Id.* at p. 1404.) Medical Group moved to compel arbitration, citing two different arbitration provisions. (*Id.* at p. 1406.) The superior court denied the motion based on the first provision and ignored the second, which was in Buckhorn's employment contract and provided for arbitration "[i]n the event that a dispute arises between the parties concerning the enforcement or the interpretation of any provisions of this Agreement." (*Ibid.*) The appellate court reversed. Relying on *Vianna*, which it characterized as "dispositive," the appellate court determined that the case "turns on whether the tort claims are 'rooted' in the contractual relationship between the parties." (*Id.* at p. 1407.) It held that all of Buckhorn's claims were arbitrable "[b]ecause

23

Buckhorn failed to demonstrate his tort claims were 'wholly independent' of the employment agreement, and any doubts must be resolved in favor of arbitration." (*Id.* at p. 1408.)

Defendants argue that there are "stark similarities" between this case and *Vianna* and *Buckhorn* that render those authorities controlling here. They emphasize the factual background of the cases, and further contend that the arbitration provisions they address are "similar" to the one in the Director Agreement. We are not persuaded that the similarities are sufficient to render the cases dispositive. The arbitration clauses in *Vianna* and *Buckhorn* were very similar to one another, but are distinguishable from the provision contained in the Director Agreement.

The arbitration clause in *Vianna* provided, "in the event of any dispute of any kind whatsoever, regarding the meaning, interpretation or enforcement of the provisions of this Agreement, both parties agree that the matter shall be resolved through the use of binding arbitration." (*Vianna, supra,* 27 Cal.App.4th at p. 1188.) The arbitration clause in *Buckhorn* similarly required arbitration "[i]n the event that a dispute arises between the parties concerning the enforcement or the interpretation of any provisions of this Agreement." (*Buckhorn, supra,* 121 Cal.App.4th at p. 1404 & fn. 1.) Both clauses mandated arbitration of disputes "concerning" or "regarding" the "enforcement" or "interpretation" of the contracts at issue. The clause here, in contrast, requires arbitration of disputes "involving the construction or application of any of the terms, covenants, or conditions of this agreement." *Bono, supra,* 147 Cal.App.4th at p. 1067, concluded that this language was

24

"substantially narrower than . . . the clause[ ] at issue in . . . *Vianna*. . . ."

Defendants contend *Bono* is inapplicable because the contract there "did not set forth the details of an ongoing working relationship." However, they do not cite any authority in support of their assertion that "a broader range of claims will 'involve' the 'construction or application'" of contractual terms when "the agreement defines the entire working relationship between the two parties."

Only after concluding that the provisions in *Vianna* and *Buckhorn* were broad did the courts there consider whether the claims at issue were "rooted in" the contracts. The trial court did not err by following that analytical sequence here. *Bono*, *supra*, 147 Cal.App.4th at p. 1067, which is both more recent than *Vianna* and *Buckhorn* and addresses an arbitration provision more analogous to that here ("any controversy among the parties involving the construction or application of any provision of this Agreement"), held that the decision whether an arbitration clause covers a particular dispute rests substantially on the breadth of the clause. Indeed, *Coast Plaza*, *supra*, 83 Cal.App.4th at p. 686 recognized that "a broadly worded arbitration clause . . . may extend to tort claims that may arise under or from the contractual relationship."

The logical implication of this principle is that a narrowly worded arbitration clause may not so extend. Because the language here is narrower than that in *Vianna* and *Buckhorn*, we do not consider whether it extends to Kapoor's non-contractual claims. This is not to say that "[t]he issue is . . . resolved simply by determining whether the arbitration clause is narrow or broad" (*Rice*, *supra*, 248 Cal.App.4th at p. 187); rather, we hold

that the claims here do not fall within the narrow universe of claims "involving the construction or application of any of the terms, covenants, or conditions of" the Director Agreement.

As the court observed in *Rice*, "'There is a good reason to indicate clearly to contracting parties what specific language will signify that the scope of their arbitration agreement is narrow. Once they know the specific language that is required, they can rely on that language to produce a result they jointly desire. . . .'" (*Rice*, *supra*, 248 Cal.App.4th at p. 189, quoting *Cape Flattery Limited v. Titan Maritime, LLC* (9th Cir. 2011) 647 F.3d 914, 923.) The same principle applies when parties wish their arbitration provisions to be construed broadly. Both *Vianna* (1994) and *Buckhorn* (2004) significantly predate the Director Agreement, which was signed in 2008. Defendants, who drafted the agreement, could have used the language from *Vianna* or *Buckhorn* rather than language similar to that in *Bono*, which was expressly held to be narrower than that in *Vianna*. They did not do so.

## III.   The Shareholders Agreement

The Shareholders Agreement provides that "[a]ny controversy or claim arising out of this Agreement shall be settled by arbitration conducted in accordance with the Rules of the American Arbitration Association and judgment upon the award may be entered in any court having jurisdiction." Defendants contend this provision requires arbitration of Kapoor's tenth cause of action for intentional interference with contractual relations and eleventh cause of action for intentional interference with prospective economic advantage. We disagree.

It is well settled that arbitration provisions using the language "arising from" or "arising out of" an agreement are

26

considered narrow in scope and "have generally been interpreted to apply only to disputes regarding the interpretation and performance of the agreement." (*Ramos*, *supra*, 28 Cal.App.5th at p. 1052; see also *Howard*, *supra*, 30 Cal.App.5th at p. 664.) Defendants contend that the tenth and eleventh causes of action, which name only Heckmann and LA Management as defendants, "arise out of" the Shareholders Agreement involving LA Medical, Winston, and Chopra because they include allegations referencing Kapoor's 40 percent share in LA Medical. Specifically, the tenth cause of action for intentional interference with contractual relations alleges: "LaserAway Medical has indicated its intention to rely on its termination of the [Director] Agreement, coupled with the buy-out provisions in the Shareholders Agreement, to take back Plaintiff's 40% ownership interest in the company. LaserAway Medical thus seeks to rob Plaintiff of her rightful ownership interest in the company and her share of dividends." The eleventh cause of action alleges: "Plaintiff was in an economic relationship with LaserAway Medical that probably would have resulted in an economic benefit to Plaintiff, including but not limited to a continuing 40% share in the profits of LaserAway Medical."

Defendants characterize these allegations as "primary factual allegations" of the causes of action, asserting that Kapoor "is alleging that Defendants improperly abused the contractual buyout provision in the Shareholders Agreement to tortiously deprive her of her shares." This is not a plausible reading of these causes of action. Both the tenth and eleventh causes of action primarily allege that Heckmann and LA Management interfered with Kapoor's contractual relationship with LA Medical, not the other shareholders.

The tenth cause of action alleges that "Heckmann, acting on behalf of LaserAway Management, disrupted the contractual relationship between Plaintiff and LaserAway Medical" by "interfering with, and improperly seeking to control, the medical aspects of LaserAway Medical's business" and "berated, harassed, and threatened Plaintiff's job when she voiced concerns." It further alleges that Heckmann instigated and interfered with her termination. It also explicitly specifies that the contractual relationship to which it refers is "the [Director] Agreement attached hereto as Exhibit 2 and incorporated herein by this reference." Though it later mentions the Shareholders Agreement in the allegation on which defendants rely, the gravamen of the tenth cause of action is Heckmann's alleged interference with the Director Agreement; it does not "arise out of" the Shareholders Agreement.

The eleventh cause of action also relies primarily upon the Director Agreement. It similarly alleges that Heckmann "berated, harassed, and threatened Plaintiff's job when she voiced concerns about Heckmann's interference, and ultimately purported to terminate Plaintiff's contract with LaserAway Medical," and that Heckmann intended to disrupt Kapoor's economic relationship with LA Medical. Notably, the only contract attached to Kapoor's complaint was the Director Agreement.

Defendants contend their interpretation of the tenth and eleventh causes of action "is buttressed by the fact that, as in the Director Agreement, the Shareholders Agreement does not contain any clauses concerning dispute resolution other than the arbitration provision." This argument fails here for the same reasons we found it lacking above.

28

Because we conclude that the tenth and eleventh causes of action do not "arise out of" the Shareholders Agreement, we need not reach defendants' argument that the trial court erred by holding that the arbitration provision in the Shareholder Agreement could not be applied to non-signatories of that document.

## DISPOSITION

The order of the superior court is affirmed. Kapoor is awarded her costs of appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


COLLINS, J.

We concur:


WILLHITE, ACTING P.J.


CURREY, J.