[No. 11004. In Bank. — September 27, 1887.]

## AMELIA F. BOWDEN, APPELLANT, *v.* JAMES P. PIERCE ET AL., RESPONDENTS.

TRUST — EXECUTOR — REFUSAL TO QUALIFY — PURCHASE OF PROPERTY OF ESTATE. — A person who is nominated as a co-executor of the will of a deceased person, and applies for letters testamentary thereon, ceases to be a trustee for the estate upon his refusal or neglect to qualify as executor; and a subsequent sale to him by the executrix of certain executory contracts belonging to the estate is valid, notwithstanding he realized large profits for the performance thereof, if the sale, at the time it was made, was fair and just, upon a sufficient consideration, and for the best interests of the estate.

ID. — ESTATE OF DECEDENT — EXECUTOR DE SON TORT. — Under the probate practice of California, there is no such officer recognized as an executor *de son tort.*

APPEAL from an order of the Superior Court of the city and county of San Francisco refusing a new trial.

The facts are stated in the opinion of Department One.

*McAllister & Bergin,* and *James L. Crittenden,* for Appellant.

*Robinson, Olney & Byrne, W. W. Cope,* and *A. L. Rhodes,* for respondent Pierce.

THE COURT.—For the reasons given in the opinion rendered in Department One, order affirmed.

THORNTON, J., expressed no opinion.

The following is the opinion of Department One above referred to, rendered on the 17th of June, 1887:—

PATERSON, J. — Plaintiff, who is an heir and devisee of A. H. Houston, deceased, commenced this action February 9, 1881, to have certain contracts of sale from the executrix to defendant Pierce declared fraudulent and void; to have defendant adjudged to be a trustee for the devisees as to all moneys realized under the sea-wall contracts so purchased by him, and to require him to account therefor.

The answer denies all charges of fraud and undue influence upon the executrix, and as a separate defense pleads the statute of limitations.

It appears from the findings that Houston, on July 23, 1867, entered into two contracts with the board of state harbor commissioners for the construction of certain sections of the sea-wall; that on December 8, 1868, said A. H. Houston, being in failing health, departed for the Sandwich Islands, the work being still incomplete; that said Houston, prior to his departure, and on the eighth day of December, 1868, executed a general power of attorney to said Pierce, which was duly accepted and recorded by Pierce, and Pierce, acting under this power of attorney, thereafter collected all moneys paid under said contracts,—he first heard of the death of Houston on March 28, 1869; that Pierce, on April 2, 1869, received $29,952.22 from said board on contract for section 3, and immediately applied the same to the use of said estate; that on April 3, 1869, an attorney, at the request of Pierce and said Caroline (named in the will as executor and executrix) filed Houston's will for probate, and Pierce's and Mrs. Houston's joint petition for letters testamentary to Pierce and Mrs. Houston; and that on April 14, 1869, the will was admitted to pro-

bate in the Probate Court of the city and county of San
Francisco, and letters testamentary ordered to be issued
to Mrs. Houston and Pierce; that Pierce did not qualify,
and did not file at any time any written renunciation of
his executorship, and that Mrs. Houston alone qualified
as executrix (April 20, 1869); that an inventory of the
property of the estate was prepared, verified on April
23, 1869, by Mrs. Houston, and filed on May 5, 1869;
that on April 7, 1869, said board advertised for bids for
the construction of section 4 of the sea-wall; that nego-
tiations thereupon commenced for the sale of said con-
tracts and of the plant to Pierce, which resulted in an
agreement of sale before April 21, 1869, and that the
agreement was " subject to the condition that it was to
be executed only in case Pierce obtained from the state
board of harbor commissioners the contract for sec-
tion 4.

After the contract for construction of section 4 of the
sea-wall had been awarded to Pierce, the agreement made
previously between him and the estate of said deceased
was reduced to writing, and signed by Pierce on May 6,
1869.

Mrs. Houston and said board and Pierce executed, on
June 24, 1869, an agreement of release and discharge,
showing that the work on Nos. 1 and 2 had been com-
pleted, and that Pierce had become the successor in in-
terest of said Houston.

No report was made to or order made by the Probate
Court of San Francisco respecting said sales to Pierce,
except a statement, on August 21, 1871, in the account of
Caroline L. Houston as executrix, in these words: " To
sale of contracts with state harbor commissioners, horses,
carts, tools, dredging machinery, etc., used about sea-
wall, office furniture, thirty cords of wood, and thirty
thousand feet of old lumber, and claim due for grading
McHenry lot, ninety thousand dollars," and a statement
in the report that " your petitioner has, as directed by

the will of said deceased, sold . . . . certain contracts in the inventory mentioned, and the horses, carts, tools, etc., used in the construction of the sea-wall, the subject of said contracts, all of which will fully appear by said account"; and thereafter, to wit, on December 12, 1871, the referee, to whom said account was referred, reported in favor of its approval. An attorney, appointed by the court for the minor heirs, appeared before the referee on the hearing of said final account. On December 13, 1871, the Probate Court adjudged and decreed that the report of the referee be confirmed and allowed and approved and declared settled, and a decree of final distribution was made on the twenty-second day of March, 1872.

The executrix and defendant were advised by their attorney (Clarke) that she, as executrix, had the power to make the. sale referred to, and that no confirmation by the court was necessary. The court also found that the contract with Pierce was fair and just, and that no advantage was taken of Mrs. Houston; and that defendant did not, in any manner, cheat, injure, or defraud the estate or any devisee; but, on the contrary, that the sale was an advantageous one to the estate, and to its best interests in all respects. The court further found, and the evidence sustains the finding, "that the superstructure required by the Houston contracts to be erected upon said embankments-could not have been erected except after great delay, and at a loss to the estate of said deceased."

The defendant made large profits out of his contracts with the harbor commissioners; but we think the fact is made quite clear that those profits were all made out of the work on section 4, for which the estate could not bid or contract. All the executrix could do was to complete the contracts on hand at the time of the death of Houston. We can find nothing improper in the refusal or failure of Pierce to qualify as executor. He was ad-

vised by his attorney "that he could better serve his sister-in-law (Mrs. Houston) by buying the plant and the contracts than by qualifying as executor."

If the findings of the court to which we have referred are supported by the evidence, and we think they are, it becomes unnecessary to determine whether there is a sufficient finding upon the issue raised by the plea of the statute of limitations.

The defendant was a trustee by implication for a brief period after the death of Houston, but the estate was in no way injured by his acts during that time.

The fact that he was named in the will as executor, and actually applied for letters, did not constitute him a trustee for the estate at the time the contract of sale was made. There is no such officer recognized under our probate practice as *executor de son tort*. (*Pryor* v. *Downey*, 50 Cal. 400; *Valencia* v. *Bernal*, 26 Cal. 335; *Estate of Hamilton*, 34 Cal. 468.) The refusal or neglect to qualify was a disclaimer of the trust. (1 Perry on Trusts, 262.)

The estate of Houston could not bid for a contract to do the work on section 4.

No profit could have been realized from the McHenry contract. There was no place in which the estate could have used the rock, and the court was justified in its finding that the sale to Pierce "was fair and just, and upon sufficient consideration to the estate and to its best interests." The profits derived by Pierce came from his contract for the construction of section 4, and his purchase of the estate, contract, and stock was made upon condition that the board of harbor commissioners should award him the contract for section 4. Even if it be assumed that the sale to Pierce by the executrix was void, and that Pierce was enabled to secure the contract for section 4 because he had secured the Houston contracts, we do not think that he can be held as a trustee of the estate with respect to the contract for section

4.   The estate did not and could not have any interest in that part of the work.

If Pierce had not paid full consideration for the property purchased by him, or if he had made any profit from the work done under the contract which the estate could have completed, he could be compelled, perhaps, to account therefor, notwithstanding the good faith of the parties; but such, as we have seen, are not the facts in this case.

Order affirmed.

TEMPLE, J., and McKINSTRY, J., concurred.