Filed 8/25/22  Van Kleef v. Azria CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PAUL VAN KLEEF, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LUBOV AZRIA, as Executor, etc., <br><br> Defendant and Appellant. | B314772 <br><br> (Los Angeles County Super. Ct. No. 19STCV28303) |

APPEAL from an order of the Superior Court of Los Angeles County, Maurice A. Leiter, Judge.  Affirmed.

Jeffer, Mangels, Butler & Mitchell and Vatche J. Zetjian for Defendant and Appellant.

Affeld Grivakes, David W. Affeld, and Damion D. D. Robinson for Plaintiff and Respondent.

\* \* \* \* \* \*

A person who signed contracts ceding his controlling percentage over a company was subsequently fired by the company's new owner.  The new owner subsequently died.  The person sued the owner's estate and others.  The estate participated in the litigation for nearly two years before moving to compel arbitration.  The trial court denied the motion to compel on the grounds that (1) the claims at issue in the lawsuit fell outside of the pertinent arbitration agreement, and (2) the estate had waived its right to seek arbitration.  We conclude that the trial court's second rationale was correct, and have no occasion to reach the first.  Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.  Facts[1]

#### A.  *Clean Concept, LLC (the LLC)*

In 2015, Paul Van Kleef (plaintiff) and Robert McFarlane (McFarlane) invented what they deemed to be an "innovative pest control product."  It was a bug zapper.  In early 2016, plaintiff and McFarlane, as 50/50 partners, formed the LLC as a vehicle for manufacturing and distributing their so-called "Zapplight."  The LLC was created in Nevada, but its principal place of business was Los Angeles, California.

---

[1]     These facts are based on the allegations in the operative complaint as well as facts contained in the declarations filed by the parties.

**B.** *Max Azria (Max)[2] acquires a controlling interest in the LLC, and uses it to raid the LLC and fire plaintiff*

Plaintiff and McFarlane needed capital to expand the LLC. The LLC's online sales consultant, Yasmine Hanane (Hanane), recommended Max as a potential source of funding. At that time, Max was Hanane's mentor as well as her paramour. Max was married to Lubov Azria (Lubov).

In the spring of 2016, plaintiff and McFarlane spoke with Max. In those discussions, Max agreed to invest $2 million in the LLC and to pay its day-to-day operating expenses.

Based on those promises, plaintiff, McFarlane, and Max in June 2016 signed an operating agreement for the LLC that (1) named Max, plaintiff, and McFarlane as "members" of the LLC; (2) granted Max a controlling 68 percent ownership interest in the LLC, with plaintiff and McFarlane each retaining a minority 16 percent interest in the LLC; and (3) named Max, plaintiff, McFarlane, and Hanane as "managers" of the LLC.

In November 2016, the parties executed a first amended operating agreement. That further agreement added Hanane as a "member," with Max retaining a 52 percent controlling interest, Hanane being granted a 24 percent interest, and plaintiff and McFarlane each retaining a 12 percent interest. Plaintiff asserts that he signed this new agreement "under extreme financial duress."

Max never made the promised, $2 million investment in the LLC.

---

[2]     Because Max Azria and Lubov Azria share the same last name, we will use their first names for clarity's sake. We mean no disrespect.

3

Max thereafter proclaimed himself to be a "god" who would thenceforth, as the LLC's controlling member, make all decisions for the LLC. In that vein, Max used the LLC's assets and funds to finance his *other* business ventures and for nonbusiness purposes, usurped the LLC's business opportunities, and paid himself (and Hanane) exorbitant salaries.

In late November 2017, Max terminated plaintiff's employment with the LLC, which was governed by a separate "services agreement" that the parties executed in June 2016. Max provided no reason for the termination, and did not pay plaintiff the severance package required for terminations without cause under the services agreement.

After his termination, plaintiff in April 2018 and November 2018 invoked his right as a member of the LLC to inspect the LLC's books and records; his requests were denied.

### C. *Max dies, and Lubov assumes control of the LLC*

Max passed away on May 6, 2019. By virtue of the original operating agreement, Lubov—as Max's spouse—became a nonvoting member with Max's 52 percent of the LLC's interest.

In August 2019, Hanane convened an "emergency meeting" of the LLC's remaining members. Two of the voting members— Hanane and McFarlane—voted to convert Lubov's nonvoting interest into a voting interest, thereby making her the controlling member of the LLC. Plaintiff objected to the meeting on the basis of improper notice, so did not vote. According to plaintiff, McFarlane sanctioned this maneuver because Max's and Lubov's lax control over the LLC had also allowed McFarlane to raid the LLC for his "personal benefit."

4

## II. Procedural Background

### A. *Pleadings*

#### 1. *Plaintiff's operative complaint*

After filing an initial complaint in August 2019, plaintiff filed a 269-paragraph operative first amended complaint in September 2019,[3] and later a supplemental complaint adding allegations against Lubov.  In 20 different claims, plaintiff sued the LLC, Max, Hanane, McFarlane, and Lubov as well as the "Estate of Max Azria" (Max's estate) (collectively, defendants).  Plaintiff alleged that he would "amend his complaint to substitute the executor, administrator, or trustee of [Max's estate] once the identity of the person becomes known."

Plaintiff brought some claims in his individual capacity, and other claims as derivative claims on behalf of the LLC.

As an individual, plaintiff (1) brought two claims based on a breach of contract—namely, (a) all defendants' failure to allow plaintiff to inspect the LLC's books and records (claim No. 3), and (b) Lubov's conduct in "causing" the LLC's members to vote to make her a voting member (claim No. 8); (2) brought five tort or tort-related claims—namely, (a) three breach of fiduciary duty claims against Max, Max's estate, Hanane, McFarlane, and Lubov for misappropriating the LLC's assets and opportunities, for elevating Lubov to be the voting, controlling member of the LLC, and for oppressing the LLC's minority owners (claim Nos. 4, 7 and 9), (b) a claim that Max, Max's estate, and Hanane fraudulently induced plaintiff to sign the June 2016 operating

---

[3]     These complaints were filed mere months after plaintiff pled no contest to the misdemeanor crime of accessing or using the LLC's computer data and taking supporting documentation without permission.

5

agreement (claim No. 2), and (c) a claim for declaratory relief that defendants committed these various torts and breaches of contract (claim No. 1); (3) brought a claim for an equitable accounting of the LLC's assets (claim No. 13); and (4) brought six employment-related claims against the LLC premised on breach of contract, tort, or Labor Code violations—namely, (a) failure to pay earned wages in accordance with the services agreement (claim No. 14), (b) failure to provide itemized wage statements (claim No. 15), (c) failure to indemnify plaintiff for employment-related expenses (claim No. 16), (d) breach of the services agreement (claim No. 17), (e) wrongful termination in violation of public policy (claim No. 18), and (f) retaliation under Labor Code section 1102.5 (claim No. 19), which was also brought against Max and Max's estate.

On behalf of the LLC, plaintiff (1) brought two claims for breach of fiduciary duty against Max, Max's estate, Hanane, McFarlane, and Lubov—namely, (a) for misappropriating the LLC's assets and opportunities, and (b) for elevating Lubov to a voting, controlling member (claim Nos. 5 and 10); (2) brought a claim against all defendants for conversion of the LLC's funds as well as a claim against Max, Max's estate, and Hanane for money had and received (claim Nos. 11 and 12); and (3) brought a claim against Max, Max's estate, and Hanane for civil theft under Penal Code section 496 (claim No. 20).

As relief, plaintiff seeks compensatory and punitive damages. In other pleadings, plaintiff estimated that his individual compensatory damages total $36,671,150 and that the LLC's compensatory damages total $80 million.

2. *Responsive pleadings*
a. From Max's estate

Max's estate retained counsel, which was the same counsel Lubov retained.[4] Through its counsel, Max's estate acknowledged receipt of plaintiff's operative complaint; answered that complaint, and in so doing, alleged 24 affirmative defenses; and filed a case management statement jointly with other defendants demanding a jury trial.

b. From the other defendants

The LLC, Hanane, and McFarlane answered the operative complaint jointly with Max's estate, and Lubov answered separately. The LLC, Hanane, and McFarlane each filed cross-complaints against plaintiff.

**B.** ***Postcomplaint litigation***
1. *Preliminary injunction(s)*

After Lubov wrote to the LLC's members in September 2020 informing them that she was going to wind down the LLC and liquidate its assets, plaintiff sought—and the trial court issued—a preliminary injunction prohibiting Lubov, the LLC, and the LLC's other members from "taking any action to liquidate, dissolve, or wind up [the LLC]" or "causing [the LLC] to pay any asserted debts to [Lubov] outside the ordinary course of business." In December 2020 and again in June 2021, the trial court modified the preliminary injunction to require Lubov and the LLC to grant plaintiff access to the LLC's offices, its cloud computer system, and its online data.

Max's estate filed oppositions to plaintiff's motion for the injunction as well as its subsequent modifications.

---

[4] Max's estate and Lubov later each retained separate counsel.

7

### 2. *Discovery*

Plaintiff served extensive discovery on defendants. Max's estate also propounded form interrogatories jointly with the other defendants.

Max's estate served responses to plaintiff's discovery requests, including his requests for document production, requests for admissions, form interrogatories, and special interrogatories. The attorney for Max's estate endorsed each of those responses, and Lubov verified the estate's supplemental responses to plaintiff's requests for admission and requests for document production.

Plaintiff filed motions to compel further responses, and defendants—including Max's estate—opposed those motions. The trial court granted the motions to compel, and ultimately issued monetary sanctions against the LLC and Lubov.

### 3. *Substitution of Lubov as the "personal representative" of Max's Estate*

In April 2020, plaintiff asked the probate court to appoint Lubov—as the executor named in Max's will—as the personal representative for Max's estate. Lubov filed a competing petition. In November 2020, the probate court issued an order naming Lubov as the "Executor" and personal representative of Max's estate and thereafter issued letters testamentary.

In January 2021, Lubov rejected the claims on Max's estate that plaintiff had filed back in April 2020—demanding $80 million on behalf of the LLC and over $36 million on his own behalf.

On April 26, 2021, the trial court granted plaintiff's motion to substitute, in place of Max's estate in the operative complaint,

Lubov in her capacity as "personal representative" of Max's estate.

### C. *Personal representative's motion to compel arbitration*

On June 21, 2021, Lubov—acting as personal representative for Max's estate—moved to compel arbitration. The basis for the motion was the arbitration clause in the operating agreement, which required mediation and then arbitration of "any controversy, dispute or claim between any of the parties hereto arising out of or related to this Agreement or any transactions resulting hereunder."

After further briefing and a hearing, the trial court denied the motion on two grounds. First, the court ruled that Max's estate had "failed to meet the burden of establishing the . . . applicability of an agreement to arbitrate" because the operating agreement did not apply to many of the parties and claims in plaintiff's operative complaint. Second, the court found that Max's estate had "waived the right to arbitrate" because it had, for nearly two years, "active[ly]" participated in the lawsuit by "answer[ing] the complaint," "engag[ing] in discovery and significant motion practice," litigating the preliminary injunction and its modifications, and "attend[ing] multiple hearings in this action and various related actions." The court rejected Lubov's argument that her "recent appointment as [the estate's personal representative] . . . relieve[d] her and the estate from the obligation to timely seek arbitration."

### D. *Appeal*

Lubov, as personal representative for Max's estate, filed this timely appeal.

9

## DISCUSSION

Max's estate argues that the trial court erred in denying its motion to compel arbitration because (1) the disputes in this case *were* within the scope of the operating agreement's arbitration clause, and (2) the trial court was wrong to find that the estate had waived its right to arbitrate.  We review an order denying a motion to compel arbitration for an abuse of discretion.  (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 484.)  In so doing, we review de novo questions of law as well as the application of that law to undisputed facts, and review for substantial evidence any factual findings made by the trial court.  (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 684; *Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 864.)  Waiver is typically a factual finding.  (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319; *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 375 (*Iskanian*), abrogated on another ground by *Viking River Cruises, Inc. v. Moriana* (2022) 142 S.Ct. 1906.)  Because, as we explain, the trial court's waiver finding is supported by substantial evidence, we have no occasion to consider the trial court's first rationale regarding the scope of the arbitration clause.

## I.    The Law on Waiver, Generally

Although a trial court must issue an order compelling arbitration if the controversy at issue is within the ambit of a mutually agreed upon arbitration clause (Code Civ. Proc., § 1281.2; *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 830), a party to such a clause may waive its right to seek arbitration by litigating the matter at issue in court rather than insisting upon arbitration (Code Civ. Proc., § 1281.2, subd. (a); *St.*

10

*Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*); *Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 389). A waiver of the right to arbitrate is "not to be lightly inferred and the party seeking to establish a waiver"—here, plaintiff—"bears a heavy burden of proof." (*St. Agnes*, at p. 1195.) However, and as noted above, we review a trial court's factual finding of waiver only for substantial evidence, which obligates us to view the record in the light most favorable to the court's finding. (*Id.* at p. 1196; *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012.)

Whether a party has waived its right to arbitrate in any particular case is not governed by any "single test." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1195; *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 782.) Instead, courts look to the totality of the circumstances. Our Supreme Court has identified several such circumstances: "'"(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking to arbitrate filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party."'"" (*St. Agnes*, at p. 1196.)

11

## II.    Analysis

### A.    *Substantial evidence supports the trial court's finding that Max's estate waived its right to arbitrate*

From the time Max's estate was named as a defendant in plaintiff's September 2019 operative complaint until Lubov, as personal representative for the estate, moved in June 2021 to compel arbitration, the estate actively litigated plaintiff's lawsuit in a judicial forum.  Through its counsel, Max's estate acknowledged receipt of plaintiff's complaint, filed an answer to that complaint, filed a case management statement demanding a jury trial on the complaint, responded to multiple discovery requests, opposed plaintiff's motions for a preliminary injunction and its modifications, opposed plaintiff's motions to compel discovery responses and to impose discovery sanctions, propounded discovery, and acceded to all of the trial court's injunctive and discovery orders.  During this nearly two-year period while the estate actively litigated these matters, the estate uttered not a word about arbitration.

Although a party will not be deemed to have waived its right to arbitration merely by responding to a complaint, by participating in litigation to *any* extent, or by responding to "preliminary court motions" (*Iskanian, supra*, 59 Cal.4th at p. 377; *Groom v. Health Net* (2000) 82 Cal.App.4th 1189, 1197), Max's estate took actions that are wholly inconsistent with an intention to arbitrate by invoking the machinery of judicial litigation to request a jury trial and oppose plaintiff's motions for discovery and injunctive relief, by delaying nearly two years before requesting arbitration, and by taking advantage of judicial discovery procedures when it joined with the other defendants in propounding written discovery.  What is more, this delay

12

certainly misled and prejudiced plaintiff, who—if the estate's motion to compel arbitration were granted—would have to relitigate each and every one of the various motions that occupied the trial court's time for nearly two years.

**B.** *Counterarguments*

Max's estate attacks the trial court's waiver finding with two broad categories of arguments—namely, (1) there can be no waiver against the estate as a matter of law, and (2) even if there can be, the trial court erred in its analysis of the pertinent factors.

1. *No waiver as a matter of law*

Max's estate makes what boils down to two arguments regarding why it cannot be deemed, as a matter of law, to have waived its right to arbitration.

First, Max's estate argues that it could not have waived its right to arbitrate because it requested arbitration mere months after Lubov was substituted into this case as the estate's personal representative; all of the estate's conduct before the trial court allowed that substitution, it argues, must be ignored.  (Cf. Prob. Code, § 9621 [duly appointed personal representative can enter into an arbitration agreement].)  The estate's argument in this regard seems to have four steps:  (1) "[a] person has no power to administer [an] estate until the person is appointed personal representative and the appointment becomes effective" (Prob. Code, § 8400, subd. (a); *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 546); (2) compliance with the statutory requirements for appointment is mandatory, as there is no such thing as a "de facto" personal representative (*Pryor v. Downey* (1875) 50 Cal. 388, 399-400 (*Pryor*) ["Under our system, there is probably no such thing as an executor *de son tort*"]; *Bowden v.*

13

*Pierce* (1887) 73 Cal. 459, 463 (*Bowden*) [same]); and (3) any actions taken by a person who is not properly appointed as the personal representative of an estate are void (*Texas Co. v. Bank of Amer. National Trust & Savings Assn.* (1935) 5 Cal.2d 35, 40 (*Texas Co.*) [act by person who has not satisfied requirements for appointment as administrator "is void"]; *Aldrich v. Willis* (1880) 55 Cal. 81, 85-86 [same]); such that (4) everything the estate did prior to Lubov's substitution into the case as the estate's personal representative in April 2021 was void and cannot count against the estate, which means that the estate *really* only participated in the litigation for two months before it moved to compel arbitration.

We reject this argument on both factual and legal grounds. Factually, it misses the mark because most of the actions the estate took during the litigation before the trial court were not taken by Lubov, but rather by the *estate's attorney*, and it is well settled that an attorney is an agent whose acts bind the client (as the attorney's principal). (*Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 403 [attorney is agent for client]; *Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.* (2015) 61 Cal.4th 988, 1011 [same]; *Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 418 [same]; Civ. Code, § 2334 [principal bound by acts of agent].) Legally, it misses the mark because the cases declaring the personal representative's conduct to be "void" deal with whether an estate can void its transactions with private third parties. (E.g., *Pryor, supra*, 50 Cal. at pp. 399-400; *Texas Co., supra*, 5 Cal.2d at p. 40; *Bowden, supra*, 73 Cal. at p. 462.) They do not address the situation here, where the issue is whether an estate can void its own prior actions before a court.

14

Second, Max's estate argues that the waiver doctrine cannot apply here as a matter of law because (1) waiver is a doctrine that can apply only when a trial court has fundamental jurisdiction in a case (*People v. Lara* (2010) 48 Cal.4th 216, 224-225 (*Lara*)), and (2) the trial court in this case lacked fundamental jurisdiction over the estate because a decedent's estate is just an amalgamation of "assets and liabilities of a decedent" and is not an "entity known to the law" that can be a "party" to a lawsuit or can have a lawyer unless and until a personal representative is properly appointed (*Tanner v. Estate of Best* (1940) 40 Cal.App.2d 442, 445; *Meleski v. Estate of Albert Hotlen* (2018) 29 Cal.App.5th 616, 624-625; *Estate of Bright v. Western Air Lines, Inc.* (1951) 104 Cal.App.2d 827, 828-829). Because the estate was not a "party" until April 2021, the estate reasons, nothing it did before then can count toward a finding of waiver.

We reject this argument as well. The trial court in this case had fundamental jurisdiction: No one disputes that the court had fundamental jurisdiction over the subject matter of the case, and whether or not an estate is considered an "entity" (for whom there must be jurisdiction over the person) or instead a collection of property (for which there must be jurisdiction over the property), there is no dispute that the court had such jurisdiction. That is because the estate answered the operative complaint *and* because the property comprising the estate is all subject to the court's jurisdiction. (*Factor Health Management v. Superior Court* (2005) 132 Cal.App.4th 246, 250; Code Civ. Proc., §§ 1014, 418.10, subd. (e)(3); *Capra v. Capra* (2020) 58 Cal.App.5th 1072, 1082-1083; *Estate of Kampen* (2011) 201 Cal.App.4th 971, 1003; *Zaragoza v. Superior Court* (1996) 49

15

Cal.App.4th 720, 725.)  Thus, the absence of a properly appointed personal representative is, at most, a defect in compliance with statutory procedures.  As such, it means that the trial court was, at most, acting in excess of jurisdiction in permitting the estate to litigate through its attorney, and "parties may be precluded from setting . . . aside" "act[s] in excess of jurisdiction" "by such things as waiver, estoppel, or the passage of time."  (*Lara*, *supra*, 48 Cal.4th at p. 225; *Rogers v. Hirschi* (1983) 141 Cal.App.3d 847, 851-852 (*Rogers*).)

What is more, the fact that Max's estate may not have been capable of being a party prior to Lubov's appointment does not mean it was incapable of waiving its right to arbitration.  The actions of the estate's attorney, as noted above, are attributable to the estate.  There is no evidence that the estate did not actually authorize the attorney to act on its behalf.  And even if we assume that the estate was incapable of being a "principal" at that time, the estate's attorney had *ostensible* authority to act on its behalf.  A principal can be bound by the acts of its ostensible agent if (1) a third party (here, the trial court) "held a reasonable belief in the [agent-attorney's] authority," (2) the principal's conduct—active or neglectful—"generated the [court's] belief in the [agent-attorney's] authority," and (3) the court "was not negligent in holding the belief."  (*LAOSD Asbestos Cases* (2018) 28 Cal.App.5th 862, 884, fn. 12; *Associated Creditors' Agency v. Davis* (1975) 13 Cal.3d 374, 399-400; *Kelley v. R.F. Jones Co.* (1969) 272 Cal.App.2d 113, 120-121; *Saks v. Charity Mission Baptist Church* (2001) 90 Cal.App.4th 1116, 1137-1138.)  None of the cases the estate cites for the proposition that an estate cannot be a "party" hold that an estate cannot retain counsel to act on its behalf.  To the contrary, both statutes and case law indicate that

16

an "estate" may function as a placeholder party of sorts as long as the proper representative for the estate is appointed prior to the entry of judgment, which certainly happened here. (E.g., Prob. Code, § 552; *Blue Ridge Ins. Co. v. Stanewich* (9th Cir. 1998) 142 F.3d 1145, 1150; accord, *Maggiora v. Palo Alto Inn, Inc.* (1967) 249 Cal.App.2d 706, 711-713 [noting that counsel may sometimes act legitimately on behalf of a receivership even prior to approval of a receiver]; cf. *Sacks v. FSR Brokerage, Inc.* (1992) 7 Cal.App.4th 950, 956-957 ["*judgment* cannot be rendered for or against a decedent . . . until the representative has been made a party by substitution"], italics added.) Thus, the trial court reasonably believed that the estate's attorney had the ostensible authority to act on the estate's behalf.

We have come across no case directly on point with the facts of this case. But the general principles set forth above support the trial court's finding of waiver. So does the policy underlying the doctrine of waiver. Waiver fundamentally rests on notions of estoppel—namely, that a party cannot act one way for a period of time and then "do a 180" and act inconsistently. (*McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1980) 105 Cal.App.3d 946, 951.) To allow a party to do so is to allow that party to "'trifle with the courts.'" (*Rogers, supra*, 141 Cal.App.3d at p. 853; *Estate of Prindle* (2009) 173 Cal.App.4th 119, 132.) Yet that is precisely what the estate aims to do with its motion to compel arbitration: For nearly two years, it fully engaged in the litigation process in court and, in June 2021, for the first time sought to hit the "reset button" by starting the entire case all over again in an arbitral forum. The trial court did not abuse its discretion in refusing to allow such a maneuver. (Accord, *Satterfield v. Garmire* (1967) 65 Cal.2d 638, 645

17

["'Equity does not wait upon precedent which exactly squares with the facts in controversy, but will assert itself in those situations where right and justice would be defeated but for its intervention.'"].)

### 2. *Improper analysis of circumstances bearing on waiver*

Max's estate alternatively argues that, even if its conduct can constitute a waiver *legally*, its conduct in this case did not constitute a waiver *factually*.

The estate's arguments in this regard boil down to two points.

First, the estate argues that our multi-factor analysis of waiver should only look to the estate's conduct after Lubov's substitution into plaintiff's case as personal representative in April 2021; as noted above, we reject this argument.

Second, the estate argues that several of the circumstances relevant to waiver cut in its favor—chiefly, that (1) this case was nowhere near the trial date, so the third factor ("whether [the] party . . . requested arbitration . . . close to the trial date") and the sixth factor ("whether the delay [in requesting arbitration] 'affected, misled, or prejudiced' the opposing party") were not satisfied, and (2) delay in requesting arbitration (the third factor) only counsels in favor of a finding of waiver when the delay is "unjustified" or "unreasonable" (*Iskanian*, *supra*, 59 Cal.4th at pp. 375, 377), and here it was not unjustified.

Neither argument is persuasive.

To begin, the nearness of trial is not dispositive of this case factually or legally. Factually, the main reason the case was nowhere near trial after almost two years is because defendants resolutely and consistently refused to comply with their discovery

18

obligations, necessitating motions to compel and warranting monetary sanctions against some, including the LLC and Lubov. Giving dispositive weight to the temporal distance from trial would reward defendants for their delay tactics, which would set up some mighty perverse incentives. Legally, the closeness of trial is not dispositive because the third factor looks to closeness to trial *or* "delay[] for a long period before seeking a stay." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1195.) It is also not dispositive to the sixth, prejudice factor. Contrary to what the estate suggests, what matters to the prejudice inquiry is whether the estate's conduct "deprive[d plaintiff] of the advantages of arbitration as an 'expedient, efficient and cost-effective method to resolve disputes.'" (*Burtoon v. Cruise* (2010) 190 Cal.App.4th 939, 948; *St. Agnes*, at pp. 1205-1206; *Gloster v. Sonic Automotive, Inc.* (2014) 226 Cal.App.4th 438, 450; *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1205.) The estate's motion to compel arbitration would deprive plaintiff of the advantages of arbitration as an expedited, efficient, and cost-effective method of resolving disputes because the net effect of granting the estate's motion would be, as noted above, to hit the reset button entirely and require the parties to relitigate all of the discovery and preliminary injunction methods anew. This would be inexpedient, inefficient, and cost prohibitive.

Further, the delay in this case *was* unjustified and unreasonable. Even if the estate's opposition to plaintiff's motions may not be enough by itself to render the resulting delay unjustified or unreasonable, the trial court's subsequent orders compelling further discovery—and, indeed, issuing sanctions against several defendants—is evidence that the delay was unjustified and unreasonable. Further, the estate has provided

19

no compelling reason why it sat around for nearly two years pretending to be fine with being a litigant in court before, upon retaining new counsel, coming up with a novel theory for jumping directly to "GO" and starting over.

## DISPOSITION

The order denying the motion to compel arbitration is affirmed.  Plaintiff is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:



_____, P. J.

LUI



_____, J.

CHAVEZ